THE KANSAS HOME INSURANCE COMPANY v. D. W. WILDER, *as Superintendent of Insurance.*—SAME V. SAME.

1. SUPERINTENDENT OF INSURANCE — *Action May be Controlled by Court.* The determination of the superintendent of insurance in granting, refusing, or revoking authority to a mutual fire insurance company to do business, on account of insolvency or non-compliance with the laws of the state, is not final, but his action in that regard is subject to inquiry and control by the court.

2. COMPANY, *When Not to Insure Property Outside of State.* A mutual fire insurance company organized under chapter 132 of the Laws of 1885, and which has no guaranty fund for the protection of its policyholders, cannot legally issue policies of insurance on property situate outside of the state.

*Error from Shawnee District Court.*

TWO CASES were brought in the district court of Shawnee county by The Kansas Home Insurance Company against D.

W. Wilder, as superintendent of insurance of the state of Kansas—one to enjoin the superintendent from revoking a certificate which had been issued by him to the company, authorizing it to do business as an insurance company in the state of Kansas; and the other was an application for a writ of *mandamus* to compel the superintendent to issue to the agents of the company throughout the state the licenses contemplated by the statutes, authorizing it to solicit insurance and to transact the business of the company. In the one case a temporary injunction was allowed, and in the other an alternative writ of *mandamus* was issued. The cases were tried together in the district court upon an agreed statement of facts, which is as follows:

"It is hereby stipulated that the substantial questions at issue in both of the above-entitled actions are as follows, to wit:

"*First:* Whether or not the court has the jurisdiction and authority to control the acts of the defendant as superintendent of insurance of the state of Kansas, and by mandamus compel him in the one case to issue the certificates to the agents of the plaintiff, prayed for in the petition; and in the other case, by injunction to perpetually restrain and prevent the defendant from revoking the certificate of authority issued by him to the plaintiff on March 12, 1889.

"*Second:* Whether or not the plaintiff, as a mutual fire insurance company organized under chapter 132 of the Laws of 1885 of the state of Kansas, has the legal right under said laws and under the certificate of authority issued to it on March 12, 1889, to insure property and to issue policies of insurance upon property situated outside of the state of Kansas.

"It is further stipulated that both of said actions be submitted to the court for the determination of said questions at issue therein upon said questions and the following statement of facts, which is hereby agreed to: The plaintiff is, and for more than one year last past has been, a mutual fire insurance company organized under chapter 132, Laws of 1885 of the state of Kansas, having its principal office and place of business in the city of Topeka, Shawnee county, state of Kansas; that the defendant is, and for more than one year last past has been, the duly-appointed, qualified and acting superin-

tendent of insurance of the state of Kansas; that on the 12th day of March, 1889, the defendant, as such superintendent of insurance, issued to the plaintiff a certificate of authority to transact business as such insurance company under § 5 of said chapter 132 of the Laws of 1885.

"After the issuance of said certificate of authority, and before the commencement of the *mandamus* suit aforesaid, No. ——, the defendant, as superintendent of insurance, declined and decided not to issue any certificate of authority to the agents of plaintiff under § 27 of said chapter 132, Laws of 1885, although proper demand was made therefor by plaintiff, and fees tendered; that the plaintiff has not now, nor has it ever had, any guarantee fund, as provided by chapter 13 of the Laws of 1885 or any other laws of the state of Kansas providing for any guarantee fund; that the plaintiff, since the issuing to it of the certificate of authority of March 12, 1889, has transacted business and issued policies of insurance upon property situated outside of the state of Kansas, and owned by non-residents of the state of Kansas, to wit, in the following-named states and territories: the Indian territory, Illinois, Missouri, and other states; and claims the right to do so. But in insuring property and the writing of policies upon property situated outside of the state of Kansas, the plaintiff has established no agencies and appointed no agents outside of the state of Kansas. Applications for insurance upon such property have been sent in to plaintiff at its principal office at Topeka, Kansas, and there passed upon, and the policies there executed, and sent from there to the applicants, who forwarded the money therefor to the said home office at Topeka; that plaintiff has issued no policy upon property outside of the state of Kansas to run for a longer time than one year, and that it has taken cash only in payment for such policies, and has at no time taken premium notes or other evidence of indebtedness therefor; that all of said policies on property outside of the state of Kansas were upon property of the second class, as designated by said chapter 132 of the Laws of 1885; that this business has come to plaintiff through brokers and others not appointed by plaintiff; that plaintiff sought this business in other states through letters, circulars, and advertising cards, the same as it sought business in Kansas; that plaintiff has issued such policies of insurance upon property outside of the state of Kansas since the issuance to it of the certificate of authority of March 12, 1889, mentioned in plaintiff's petitions; that defendant as such superintendent

of insurance, because of the facts herein stated, claims the right to, and proposes to, revoke said certificate of authority of March 12, 1889; that both of these cases are to be tried and determined by the court upon the questions and facts herein stated, and such other matters as may be contained in the pleadings are not to be regarded."

Upon this stipulation the district court, at the April term, 1889, refused the injunction and denied the application for the temporary writ of *mandamus* prayed for, and gave judgment for costs in both cases in favor of the defendant. Exceptions were taken to the rulings and judgment of the court, and the cases were removed to the supreme court by the insurance company for review.

*Overmyer & Safford,* and *Talcott Ormsbee,* for plaintiff in error.

*L. B. Kellogg,* attorney general, for The State.

The opinion of the court was delivered by

JOHNSTON, J.: Two cases between the same parties are submitted together upon a single statement of facts; and according to the stipulation of the parties, only two legal propositions are presented for decision. The first one of these is whether the courts can inquire into and control the superintendent of insurance in the exercise of his official duties in granting, refusing or revoking a certificate of authority to a mutual fire insurance company organized under chapter 132 of the Laws of 1885. Prior to the legislative session of 1889, the finding and judgment of the superintendent in respect to the solvency of an insurance company and its compliance with the requirements of law could not be controlled, and when he had exercised his discretion and judgment it could not be reviewed, nor the motives which actuated him inquired into, by the courts. (*Insurance Co. v. Wilder,* 40 Kas. 561.) The decision in the cited case, construing the statute with reference to the power and discretion of the superintendent, was given in January, 1889; and the legislature, which convened in the same month, materially modified the statute prescribing the power

and duties of the superintendent in dealing with mutual fire insurance companies. In § 24 of chapter 132 of the Laws of 1885, provision was made that whenever it should appear to the superintendent of insurance that the solvency of a mutual fire insurance company was impaired, or that the insurance laws of the state were being violated, he should immediately make an examination; and for that purpose should have access to all the books and papers of the company, and have power to administer oaths and examine witnesses. It then proceeds:

"If *the superintendent of insurance shall find,* upon such examination, that the solvency of the company has been impaired, or that the laws of the state have been violated, he shall immediately suspend the certificate of authority until the laws of the state have been fully complied with, or the solvency of the company restored; or, if in his judgment the public safety require it, he may revoke the certificate of authority, and cause the company to be enjoined from further insuring of property."

This section was amended by chapter 159 of the Laws of 1889, in which, after providing for reports and examinations substantially as in the original section, the provision above quoted is changed so as to read as follows:

"If the solvency of such company has been impaired, or the laws of the state have been violated by the company, the superintendent of insurance shall immediately suspend the certificate of authority until the laws of the state have been fully complied with or the solvency of the company has been restored; and he also may in such a case revoke the certificate of authority, and cause the company, upon proper proceedings instituted against it, to be enjoined from further insuring of property."

Provisos are then added, which in substance state that the superintendent cannot refuse an insurance company a certificate of authority to do business in the state, or revoke or suspend a certificate already granted to such a company, if it is solvent and has complied and is complying with the laws of the state. And the provisos further recognize that actions may be brought against the superintendent of insurance in the county where his office is located, to compel him to issue

certificates of authority to an insurance company, and to restrain him from revoking or suspending a certificate of authority which had been theretofore granted. The language in the statute of 1885 which we have italicized was omitted in the amendment of 1889. In the earlier provision, the license or certificate of authority might be suspended on the mere finding of the superintendent that the solvency of the company had been impaired, and it might be revoked solely upon his judgment that the public safety required it. The language authorizing the suspension or revocation of a certificate of authority upon the mere finding and discretion of the superintendent, is carefully excluded from the later provision. These changes, together with the provisions forbidding the refusal, revocation or suspension of a certificate of authority by the superintendent where the company is solvent and has complied with all the laws of the state, as well as the proviso which recognizes that an action of *mandamus* may be brought to compel the superintendent to issue certificates of authority, and an action of injunction may be brought against him to enjoin him from revoking or suspending certificates of authority, indicate quite clearly the legislative purpose that in the future the determination and action of the superintendent should not be final and conclusive so far as mutual fire insurance companies are concerned. The fact that the law was amended so soon after a judicial construction had been placed upon it, is not to be overlooked in ascertaining the object of the legislature in enacting the amended law. By changing the language of the statute, the legislature has indicated a purpose to change the rule of the former statute, and that the new is to have a different construction than had already been placed upon the old one. This circumstance, and the changes in the phraseology that were made, manifest a legislative purpose to make the determination of the superintendent as to the right of a mutual fire insurance company to begin or continue business subject to judicial inquiry and control. If this was not the effect, then the amendment was for no purpose; and it is contended here that no actual change was made or intended

1. Superintendent of insurance—action may be controlled by court.

by the amendment. But we cannot presume that the "legislature intended to go through the form and time and expense of legislation to accomplish nothing, or to do that already fully and completely done." (*City of Emporia v. Norton*, 16 Kas. 236.) The first question presented must therefore be decided in the affirmative.

The second proposition submitted is, whether a mutual fire insurance company organized under the laws of Kansas, having no guaranty fund, may legally transact business and issue policies of insurance on property situate outside of the state. No question has been raised in these proceedings regarding the solvency of the company; but it is conceded that it has sought business outside of the state, and has issued policies of insurance on property owned by non-residents and situate in the Indian Territory, and also in Illinois, Missouri, and other states. If this course is in violation of the law, the action of the superintendent must be upheld, and the decision of the district court affirmed. The company is organized under chapter 132 of the Laws of 1885; and an examination of the provisions of that act and the other statutes relating to mutual fire insurance companies leads us to the opinion that the legislature intended to confine the business of mutual fire insurance companies of the class to which the plaintiff belongs to the transaction of business within the state. It is true, as contended, that a corporation organized under the laws of the state would ordinarily be regarded as having authority to transact business wherever it might find it connenient or profitable beyond the limits of the state, unless restricted by some provision of its charter or statute of the state. In behalf of the defendant, however, it is urged that the provisions of chapter 132 alone manifest a legislative intention to restrict the business of such a company within the limits of the state. The attorney general first refers to §1 of the act, where it is provided that the company shall be organized exclusively from residents of the state. By §10 of the act, it is provided that every person who effects insurance in the company under the provisions of the act shall thereby

47—43 KAS.

become a member of the corporation. Only persons holding a policy of $500 are eligible to the office of director, and the president, vice-president and treasurer are to be selected from among the directors. It is argued that the meetings of the company must be within the state, and that the corporators, directors and officers must be residents of the state. Attention is also called to § 12 of the act, which provides that suits against the members for any assessment are to be brought before a justice of the peace of the county in which the insured resides. In this connection it is urged that the legislature certainly did not design that its acts should operate on officers and courts beyond the territorial limits of the state. It could not enact a statute having extra-territorial force, and the presumption will be that the legislature did not intend to exceed its jurisdiction by attempting to regulate the power and duties of justices of the peace in other states. As against this contention, it is argued that under the provisions of § 9 the premiums for a single year may be paid in cash, and hence the provisions of § 12, with reference to the collection of notes, would not apply. On the other hand, it is said that only *part* of the premium is to be paid in cash, and that the general scheme is that the premium notes shall be taken, because under § 4 the company has no power to issue policies until applications in good faith have been received for insurance in one class to the amount of at least $100,000, and premium notes have been received in advance for the sum. The argument is, that as the general plan provides for the reception and collection of premium notes, the provision of § 12 fairly indicates that all members are to be residents of the state, and that even if an exception exists allowing one-year premiums to be paid in cash, the purpose derived from the general scheme is none the less manifest that the membership and business must be confined within the state. A reference is also made to § 14, which provides that the premium notes taken by the company shall become a lien upon the property insured, by filing an abstract in the office of the register of deeds of the county in which the property is situate, giving

the name of the maker, date, amount, and maturity of the note, and also the date of the expiration of the policy of insurance, together with a description of the property insured. It is obvious that the legislature in this provision was prescribing rules for Kansas alone, and is not to be understood as attempting to provide for establishing liens on real estate beyond the limits of Kansas. This is cited as another strong evidence that the business of the companies was to be restricted within the limits of the state. Then, again, it is contended that under the general plan and policy of such companies, where there is no guaranty fund for the protection of the insured, the public safety requires, and the legislature intended, that the officers and members and the business done shall be under the inspection and supervision of the insurance department, and that this safety would not be afforded if such companies were permitted to do business in places beyond the jurisdiction of the department. All these matters are entitled to consideration, and to a greater or less extent furnish a guide for determining the legislative intention; but a weightier and stronger reason for the view taken by the district court is the provision found in § 4 of chapter 130 of the Laws of 1885, which in terms provides that such mutual fire insurance companies as have a guaranty fund of $100,000 may do business outside of the state of Kansas. This statute was enacted at the same session and was approved one day earlier than was chapter 132, under the provisions of which the plaintiff is acting. Both relate to the same general subject, and the several acts provide a general system, and for the purposes of construction are to be considered together and construed as a single act. The system embraces companies organized from residents of the state, whose business is divided into two classes, each of which is to be conducted separately and independently of the other. (Laws of 1885, ch. 132.) When any such company has done business for a certain length of time and to a sufficient amount, it may create a guaranty fund to the amount of $25,000, and may then issue policies within certain limitations on property situate in the state of Kansas. (Laws of

1885, ch. 130, §§ 1, 2, 3, and 4.)    When such a company pro-
vides a guaranty fund of not less than $50,000, it may adver-
tise for and do business in that class of the system within
certain other limitations. (Laws of 1889, ch. 160.)    And then
when the company reaches the stage of having a guaranty fund
of $100,000, it may do business either in or out of the state.
(Laws of 1885, ch. 130, § 4.)    When these provisions are
taken together and considered in the light of each other, they
indicate an intent on the part of the legislature that only such
companies as secure their policyholders by a guaranty fund of
$100,000 may insure property beyond the limits of the state
of Kansas.    The language employed in the first part of § 4
of chapter 130 indicates that companies having a guaranty
fund of only $25,000 are confined to business within the state,
and it could hardly be intended that companies having less
than that amount might go beyond the limits of the state.
There is nothing in the act of 1889 which militates against
the view taken.    While the language employed is not as ex-
plicit and clear as it might have been, and the proposition

2. Company,
when not to
insure prop-
erty outside
of state.

under consideration not wholly free from doubt,
yet when all the provisions of the legislature rel-
ative to mutual fire insurance companies are read
together it is reasonably clear that the legislature intended
that such companies as have no guaranty fund can issue poli-
cies only on property situate in Kansas.

It follows that the judgment of the district court must be
affirmed.

All the Justices concurring.