CASE 40.—ACTION BY THE MUTUAL LIFE INSURANCE COM-
PANY OF NEW YORK v. HENRY R. PREWITT, IN-
SURANCE COMMISSIONER OF KENTUCKY.—De-
cember 3.

# Mutual Life Ins. Co. of N. Y. v. Prewitt, Ins. Com.

Appeal from Franklin Circuit Court.

R. L. STOUT, Circuit Judge.

From a judgment of dismissal the plaintiff appeals
—Reversed.

1.  Statutes—Operation—"Law."—The statutes of a State have no
    extraterritorial force. They are not "law" in another State,
    in the ordinary sense of the term.
2.  Insurance—Regulation—Authority of Insurance Commissioner.
    —The insurance commissioner is a creature of the statute,
    possessing no authority except that which the statute confers
    on him; and, where he undertakes to act in a case in which
    the statute gives him no authority, he may be controlled by
    injunction.
3.  Same—Foreign Insurance Companies—Licenses—Revocation—
    Grounds.—Ky. Stats., 1903, section 634, authorizing the issu-
    ance of a license to foreign insurance companies which have
    "fully complied with the laws of this State," and section 753,
    authorizing the revocation of such license, where a company
    has "failed to comply with the law," etc., do not authorize
    the revocation of a license unless the company has violated
    the statutes of the State governing insurance companies, the
    quoted words referring to the provisions of the statutes; and
    the insurance commissioner can not revoke a license of a
    foreign company because it has discharged its State manager
    by reason of his candidacy for trustee of the company on a
    ticket in opposition to the ticket supported by the trustees
    in office, and because it has spent a part of the company's

funds in soliciting support for its candidates for trustees, the amount so spent not affecting its solvency.

4. Appeal — Dismissal — Grounds — Moot Question.—Where the right of a foreign insurance company to do business in the State is involved in a suit by it against the insurance commissioners, an appeal by it from a decree dismissing the suit and dissolving an injunction enjoining the commissioner from refusing to continue the company's authority to do business in the State does not raise a moot question, and it will not be dismissed, though at the time of the decision of the court of appeals its judgment will not have any real value, since its judgment will relate to the date of the submission.

5. Same.—Where a case on appeal necessarily stands over for argument or for judgment from term to term, a party will not be prejudiced by the delay, but will be allowed to enter judgment retrospectively to meet the justice of the case.

Chief Justice O'Rear and Judges Nunn and Lassing dissenting.

GRUBBS & GRUBBS for appellant.

JOHN W. RODMAN, HAZELRIGG, CHENAULT & HAZELRIGG of counsel.

POINTS MADE.

1. The laws of Kentucky do not require an annual license to be issued to a foreign life insurance company, but when such corporation shall have once been admitted to transact business therein, and thereafter meets all local statutory requirements, the authority continues until there has been a legal revocation. (Ky. Stats., sections 631,3,4; Ky. Stats., section 633; Ky. Stats., section 753; Security Mutual Life v. Prewitt, 202 U. S., 246.)

2. The injunction granted herein preserves the status, and so long as it stands the questions involved can not become abstract. (Bankers' Life v. Howland, 73 Vt., 1; Traders' Ins. Co. v. Van Cleve, 183 Ill. 330, 47 L. R. A. 795; Liverpool, etc., Co. v. Clunie, 88 Fed., 160; Mutual Life Ins. Co. v. Boyle, 82 Fed., 705; Metropolitan Life Ins. Co. v. McNall, 81 Fed., 888.)

3. The State having received as of December 31, 1906, the annual tax due from appellant, the payment thus made, even if a license were necessary, would, other requirements having been met, operate as a license until December 31, 1907. (Ky. Stats., section 4226; Dakota v. Glidden, 113 U. S., 225; Lord v. Veazie, 8 How., 252.)

N. B. HAYS, Attorney General, and C. H. MORRIS for appellee.

Mutual Life Ins. Co. of N. Y. v. Prewitt, Ins. Com.

The appellee contends that this action should be dismissed, because,

First. That appellant insurance company can not be heard to say that no license is required of it by statute, because it has for many years (as shown by affidavit of Prewitt, commissioner paid the fees required, and accepted the license issued by the commissioner, and therefore, there has been a contemporanous construction of the laws, for a long period of time, both by the appellant insurance company and the insurance commissioners. On this we need not quote authorities; neither are we driven to this contention, because,

Second. The appellant insurance company is incorporated under the laws of New York, consequently a foreign corporation, and being controlled by the laws of that State, is necessarily governed under the reciprocal or retaliatory laws of Kentucky.

WILLIAM LINDSAY for appellee.

The question before this court is not whether the reasons given by the commissioner for the revocation of the certificates of authority issued to the appellee or its agents are good and sufficient, but whether he has exercised a power conferred on him by law.

Our contention is:

First. That the law does not require him to state his reasons for the opinion, in obedience to which he acts in revoking or suspending certificates of authority to a foreign insurance company, or to its agents. It is therefore indifferent whether he gives good reasons or insufficient ones, if his act be within his statutory authority. We do not concede, however, that the reasons given by the commissioner are not good, or that they are insufficient.

Second. That the action of the commissioner is final and conclusive, and that no court has authority to review that action or to intervene, to the end that it may be nullified.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

The Mutual Life Insurance Company of New York, having complied with the laws of this State, license to transact business in this State was issued to its agents by the insurance commissioner. After this

had been done, and the company had acquired a large business in the State, the Legislature of New York passed an act requiring an election to be held on December 18, 1906, to elect 36 trustees of the company. Under the act the trustees then in office were charged with the duty of naming a ticket, designated the "Administration ticket." Pursuant to this direction, the trustees in office named such a ticket. The law also provided that any number of policy holders not less than 100 might name a ticket. Under this provision two additional tickets were named; one designated the "United Committees ticket," and the other the "Selected Fusion ticket." Biscoe Hindman was the company's manager for Kentucky, under a contract which it had power to terminate on 30 days, notice. The management of the company earnestly supported the Administration ticket. Biscoe Hindman was a candidate for trustee on one of the opposition tickets, and the contest was a bitter one. The opposition to the Administration ticket charged that the affairs of the company had been mismanaged, and urged that the company should be placed in new hands. The trustee in office notified Hindman that he must either retire from the opposition ticket or resign as manager of the company. He' refused to do either, and they removed him, and also removed other managers for like cause. Thereupon, Henry Prewitt, the insurance commissioner for this State, addressed to the president of the company the following: "Mt. Sterling, Ky., Oct. 4, 1906. President Charles A. Peabody, Mutual Life Insurance Company: Associated Press dispatches today state that Col. Hindman, of Louisville, Ky., has been dismissed from your service on account of his having been nominated as a candidate on the opposition

ticket to the administration ticket. Is this true? Any rule or by-law of your company which permits such action on your part, to say the least, is unjust and unfair to the policy holders of your company, and in spirit un-American and tyrannical. Such a company, managed by men that undertake to coerce employees by such methods, will not be tolerated in this State. You are notified to appear at Frankfort, Ky., on or before October 13th, and give a full account of your actions in reference to this matter. Henry Prewitt, Insurance Commissioner.'' The president of the company appeared before the commissioner and admitted the facts stated, but insisted that the management had but done its duty, his position being that the first duty of a manager of the company was to solicit people for life insurance; that the basis of life insurance is confidence in the company's solvency and the integrity of its management; that it is impossible for an agent to do his full duty to the company in soliciting life insurance when he is publicly proclaiming that the company is unworthy of confidence, and that the management is corrupt or incapable; that such an agent would do the company incalculable harm; that his utterances would be given peculiar weight by reason of his position, and that no man has the right to insist on wearing the livery of the company for the purpose of using it to destroy public confidence in the management of the company; that he had the right to exercise free speech, but that he should exercise it against the company as an individual and not as its manager. On the other hand, the commissioner concluded that the trustees had no right to remove Hindman for the cause stated. It also appeared that a letter had been sent out to every policy holder asking his sup-

port of the Administration ticket, and giving reasons
therefor in view of the charges that had been made.
The cost of the sending out of these letters amounted
to $10,000, and as it is claimed was paid out of the
company's funds. The commissioner was proceed-
ing to cancel the license to the company's agents,
when this suit was filed enjoining him from so doing.
On final hearing the circuit court dissolved the in-
junction and dismissed the petition; and the insur-
ance company appeals.

The judgment of the commissioner to revoke a
license depends upon section 753, Ky. St. 1903. "If
he is of the opinion, upon examination or other evi-
dence that a foreign insurance company is in an
unsound condition, or if it has failed to comply with
the law, or if its officers or agents refuse to submit
to examination or to perform any legal obligation in
relation thereto, or, if a life insurance company, that
its actual funds are less than its liabilities, he shall
revoke or suspend all certificates of authority granted
to it or its agents." It is manifest from the proof
that the insurance company was not in an unsound
condition. Its assets were far in excess of its lia-
bilities, and its solvency was undoubted. Whether
the $10,000 spent in postage was paid by the com-
pany or was a proper expenditure to preserve the
good name of the company and maintain the confi-
dence of its policy holders we need not consider, as
manifestly from the proof this expenditure affected
in no way the solvency of the company. It is not
maintained that the officers or agents of the com-
pany had refused to submit to an examination or
to perform any legal obligation in relation thereto, or
that its actual funds were less than its liabilities.
It is simply insisted that the company had failed to

comply with the law; and so the case turns wholly on the meaning of this provision of the act.

Further on in the same section there is this provision as to domestic companies: "If upon examination, he is of opinion that any domestic insurance company is insolvent, or has exceeded its powers, or has failed to comply with any provision of law, or that its condition is such as to render its further proceedings hazardous to the public or to its policy holders, he shall revoke or suspend all licenses issued to it or its agents." It will be observed that as to foreign or domestic companies there is substantially the same language; it being provided that the license of the domestic company shall be revoked where it has failed to comply with any provision of law. As to domestic companies formed under the statute, these words can naturally refer only to failures to comply with some provision of the statute; for the act must be read as a whole, and, as it describes how domestic companies may be organized and when they shall commence business, it is manifest that, when the Legislature provided for the revocation of their licenses for the failure to comply with any provision of law, it had in mind those things which it had required these companies to do before doing business, and not the laws of other States. The statutes of a State have no extraterritorial force. They are not law in another State in the ordinary sense of the term. The same principle must be applied to foreign insurance companies. By section 634 of the statute (Ky. Stats. 1903) every insurance company not organized under the laws of this State is required to manifest certain things to the insurance commissioner. It then provides: "And the commissioner, upon being satisfied that such company has fully complied with the laws

of this State, and is possessed of the legal reserve, shall furnish to such agents as the company directs a license to transact business as agent for said company under the seal of the insurance department.'' The insurance company might impose upon the commissioner and obtain a license where it had not complied with the laws of the State, or done the things required to be done by it before the license was issued; and so it was provided by section 753 that, if any company so failed to comply with the law, its license may be revoked after the license has been issued. The words ''comply with the law'' in section 753 have the same meaning as the words ''fully complied with the laws of this State'' in section 634. It is the duty of an insurance company to pay a loss when it occurs if a just liability. Its failure to pay a just loss would be a failure to comply with the law, although the loss was disputed, but it was not the intention of the Legislature that every infraction of the law by an insurance company should be cause for the revocation of its license. Under such a construction, no insurance company could afford to do business in this State. The insurance commissioner is the creature of the statute. He has no authority except that which the statute confers upon him. In the state of case in which the statute authorizes him to revoke a license, his discretion, unless exercised arbitrarily, cannot be controlled by injunction; but, when he undertakes to act in a state of case in which the statute gives him no authority to act, he may be controlled by injunction. He is a ministerial officer, and his acts beyond the authority conferred upon him by law have no force. The law is the source of his authority and all of his acts must be within the limits of that authority. It is the province of the courts

to construe the statute, and determine the scope of his authority. State of Minnesota, etc., v. Fidelity & Casualty Co., 39 Minn., 538, 41 N. W. 108; Insurance Co. v. Wilder, 43 Kan. 731, 23 Pac. 1061; Liverpool & London & Globe Insurance Co., etc, v. Clunie (C. C.) 88 Fed. 160; North British Mercantile Co. v. Craig, 106 Tenn. 621, 62 S. W. 155; Traders' Insurance Co. v. Van Cleave, 183 Ill. 330, 55 N. E. 698, 47 L. R. A. 795; American School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 23 Sup. Ct. 33, 47 L. Ed. 90

For the reasons given, we conclude that the commissioner was not authorized by the statute to revoke the licenses to the company's agents on the facts shown, and that the circuit court erred in dismissing the petition and dissolving the injunction. The motion to dismiss the appeal is not well taken. By the injunction the defendant was enjoined "from refusing to continue plaintiff's authority or licenses to its agents or in any manner preventing plaintiff or its agents conducting said business in the State of Kentucky." The purpose of the injunction was to preserve the status then existing until the rights of the parties were settled. The right of the plaintiff to do business in the State is involved, and so the questions are real, not moot. Not only so, but the questions admittedly were real and of value when the case was heard and submitted. The judgment of this court relates to the date of the submission, and so revivor is unnecessary if either of the parties die after submission. Goggin's Adm'r v. Cord, 7 Ky. Law Rep. 39, 3 Cyc. 407, and cases cited. It is a legal maxim that the act of the court shall prejudice no one. The failure of this court to reach a case and decide it promptly after submission cannot be per-

mitted to defeat the substantial rights of a litigant. In Broom's Legal Maxims, 121, under the maxim, "Actus curiæ neminem gravabit," it is said: "The above maxim is 'founded upon justice and good sense; and affords a safe and certain guide for the administration of the law.' In virtue of it, where a case stands over for argument from term to term on account of the multiplicity of business in the court, or for judgment from the intricacy of the question, the party ought not to be prejudiced by that delay, but should be allowed to enter up his judgments retrospectively to meet the justice of the case; and therefore, if one party to an action die during a curia advisari vult judgment may be entered nunc pro tunc, for the delay is the act of the court, and therefore neither party should suffer for it."

Judgment reversed, and cause remanded for judgment as above indicated.

CHIEF JUSTICE O'REAR and JUDGES NUNN and LASSING, dissenting.