# National Benefit Association v. Clay, Insurance Commissioner.

(Decided January 28, 1915.)

## Appeal from Franklin Circuit Court.

1. Insurance—Right of Foreign Assessment Association to do Business in This State.—When a foreign assessment association has fully. complied with the requirements of Section 680 of the Kentucky Statutes, and is in a sound condition, and there is nothing in its charter or by-laws or method of doing business that is obnoxious to the laws of this State, the Commissioner of Insurance is not authorized to refuse it a certificate to do business in this State.

2. Corporations—Foreign Corporations to Do Business on Equality With Domestic Corporations—Construction of Section 202 of Constitution.—Under Section 202 of the Constitution a foreign corporation will not be allowed to transact business in this State on more favorable conditions than like domestic corporations, but it is not necessary that a foreign corporation seeking authority to do business in this State should be incorporated or organized according to the forms prescribed for the incorporation or organization of domestic corporations.

3. Corporations—Construction of Section 202 of Constitution.—Under this section when a foreign corporation comes into this State, no matter how it was incorporated or organized in another State, it cannot do business in this State under more favorable conditions than like domestic corporations.

4. Insurance—Powers of Commissioner.—Under Sections 752 and 753 of the Kentucky Statutes the Commissioner of Insurance has

ample power to protect the people of the State against foreign companies that are not in a sound condition or that fail or refuse to comply with the laws of this State, and when a foreign corporation is admitted to do business in this State this privilege does not in any manner interfere with the right of the commissioner to compel it to do business in conformity with the laws of this State, and the provisions of its charter and by-laws, or to at any time exclude it from the State if it is doing business in violation of our law or in a manner not authorized by its charter or by-laws or if its affairs for any reason become in an unsound condition.

JAMES H. POLSGROVE and J. P. HOBSON & SON for appellant.

JAMES GARNETT, Attorney General, and M. M. LOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This is a mandamus suit by the appellant insurance association to compel the appellee, M. C. Clay, Insurance Commissioner for the State of Kentucky, to issue to it a certificate authorizing it to transact business in the State. The circuit court on demurrer dismissed the petition on the ground that it did not state facts sufficient to constitute a cause of action, and the association appeals.

The petition averred, in substance, that the appellant was a corporation created under the laws of the District of Columbia. That its object was to provide aid to its members when, by reason of sickness or accidental injury, they become entirely disabled temporarily from their business pursuits, and to furnish a fund to their families or dependents in the event of their death, the fund for this purpose to be created by dues and assessments levied upon the members.

It was further averred that the capital stock of the association was five thousand dollars, divided into five hundred shares of the par value of ten dollars each, and that the members of the association might be shareholders of the capital stock thereof; that at the time of the organization and the amendment thereto the capital stock was fully subscribed for.

It was further averred that the property of the association and its assets were set apart as a fund out of which all expenses and losses should be paid, and from the surplus at the close of each year the board of directors might direct the payment of such dividends as

the operation and profits of the association in its judgment warranted, and such dividends should be payable to the stockholders of record at the date of the declaration thereof. That it issued policies and made agreements with its members whereby it undertook to pay them, in case of sickness or injury, benefits, the money to pay which was derived from voluntary donations, admission fees, dues and assessments collected from the members.

It was further averred that on December 31, 1913, it had, in good faith, and in full force and effect, 58,692 policies of insurance issued to persons, who were eligible to have such policies issued to them, and that the amount of insurance in force on that date was $3,205,106.70, and the total assets of the association on that date were $152,578.50. That on the 15th day of September, 1914, it deposited with Clay, as Commissioner, a certified copy of its articles of incorporation, a copy of its statement of business for the year ending December 31, 1913, and also a verified certificate that it had paid and had ability to pay all of its policies, and also a certificate from the Superintendent of Insurance for the District of Columbia certifying that it was entitled to do business in that District, and that he held for the benefit of policyholders good securities in which insurance companies are allowed by law to invest their capital amounting to fifty thousand dollars. That it also filed with the Commissioner a copy of the form of application for membership, a copy of its policy to be issued, and of its constitution and by-laws, all of which show that indemnities to beneficiaries are in the main provided for by assessments on the members.

It further averred that it was made to appear to the Commissioner that the affairs of the association were in sound condition and its business carried on in accordance with the terms of its constitution and by-laws. That when it tendered this information to the Commissioner it offered to deposit with the Superintendent of Insurance of the District of Columbia an additional fifty thousand dollars in good securities in which insurance companies are allowed by law to invest their capital, or to deposit with the Treasurer of the State of Kentucky, or with the Superintendent of Insurance of the District of Columbia, for the benefit of its policyholders, good securities, amounting to not less than ten

thousand dollars, in which insurance companies are allowed by law to invest their capital.

It further set out that it was authorized to do business in five named States, but that the Insurance Commissioner, although it furnished him, at the time and in the manner stated, the necessary information showing its right to do business in this State, refused to issue to it a certificate giving it the right to transact business.

Accepting as true all these averments, which stand confessed by the demurrer, the question is, does the association make out a case entitling it to the relief sought? The answer to this question must be found in the Statutes, as the reasons that influenced the Commissioner to refuse the certificate, although they should have been made a part of the record so that we might have this assistance in disposing of the case, have not been filed; but it appears from the brief filed in behalf of the Insurance Commissioner that he refused to grant the association the right to do business in this State "because its charter does not conform to the laws of this State, and the provisions of its charter are inconsistent with the laws of this State."

We think there can be no doubt that the association is an assessment insurance company within the meaning of Sections 660-681 of the Kentucky Statutes. These sections not only provide for the incorporation in this State of assessment insurance companies, and for the admission into this State of foreign companies, but lay. down rules applicable alike to domestic and foreign insurance companies in the conduct of their business in this State. Many of these sections, and, in fact, all of them, unless it is specifically stated that they apply to domestic companies or to foreign companies, or this follows by necessary implication, are applicable to both classes of companies alike. But Section 680 applies alone to foreign companies and sets out the conditions under which such companies may be admitted to do business in this State.

It provides that a foreign company desiring to be admitted "shall deposit with the Commissioner a certified copy of its charter or articles of incorporation, a copy of its statement of business for the year ending the 31st day of the next preceding December, sworn to by the president and secretary, or like officers thereof, setting forth the number and amount of certificates of

membership or policies in force, and a detailed account of its expenditures, income, assets and liabilities, and also a certificate sworn to by the president and secretary, or like officers thereof, setting forth that it has paid, and has the ability to pay, its certificates or policies to the full limit named therein; that its certificates or policies are payable only to the beneficiaries having a legal insurable interest in the life of the member or insured; that an ordinary assessment upon its members is sufficient to pay its maximum certificate of membership or policy theretofore issued, if any, or thereafter to be issued to residents of this State, to the full amount or limit therein named."

It also provides that it shall furnish to the Insurance Commissioner of this State a certificate from the Insurance Commissioner of its home State certifying that it is entitled to do business in its home State and that the Commissioner holds on deposit for the benefit of policy-holders of such company good securities amounting to not less than the amount of the maximum certificate or policy issued by it; that any company not having such deposit in the State where it is organized may make the deposit in this State in the manner and subject to the provisions of the law applicable to companies organized under the laws of this State.

It is further provided in this section that "the certificate of authority herein authorized may be withheld from any such corporation or association whenever it may appear to the satisfaction of the Commissioner that the affairs and business of such corporation or association are in an unsound condition. or its business not carried on within the limits and restrictions of its organic law, or that any of the terms, conditions or by-laws have been or are being violated, or that said corporation shall refuse to permit a full examination of its affairs to be made when deemed necessary by the Commissioner."

It is averred in the petition, and must be accepted as true, that the association furnished to the Commissioner all the information required by this section, and that it was made to appear to him that its affairs were in a sound condition and its business carried on within the limits of its charter, constitution and by-laws, and it was willing to permit a full examination of its affairs to be made.

In addition to this, it further offered to deposit with the Treasurer of this State, or with the Superintendent of Insurance for the District of Columbia, for the benefit of its policy-holders, good securities in which insurance companies are allowed by law to invest their capital, of not less than ten thousand dollars. This offer was made to conform to the Act of 1910, which amended so much of Section 680 as provided for the deposit of good securities amounting to not less than the amount of the maximum certificate or policy issued by it so as to read that there should be deposited not less than ten thousand dollars.

Having thus observed all the requirements of Section 680, the argument is made by counsel for the association that the Commissioner had no authority to deny it admission into this State, and, if it be true that a compliance with the requirements of this section is all that a foreign insurance company must do to entitle it to admission into this State, it may well be doubted if the Commissioner had authority to refuse to the association the certificate applied for. It will be observed, however, that this section also provides that the certificate may be withheld whenever it appears to the satisfaction of the Commissioner "that the affairs and business of such corporation or association are in an unsound condition," but on the record we cannot assume that it was denied admission for this reason, as it offered to submit to an examination of its affairs and showed that it had done, or was willing and able to do, all the things required by Section 680.

It is furthermore apparent from the manner in which the case has been practiced by counsel for the Commissioner, and from the briefs filed in his behalf, that the Commissioner refused to admit the association because, in his opinion, "its charter does not conform to the laws of this State and is inconsistent with our laws," and not because, from any examination of the affairs of the association, such as might have been made under Sections 752 and 753 of the Statute, he was of the opinion that it was in an unsound condition.

Having this view of the reasons that influenced the Commissioner, the only question it is necessary to consider is, was the charter of this association, and its method of doing business as provided in the charter, so obnoxious to the insurance laws of this State as to

authorize the Insurance Commissioner to forbid it admission into the State?

It is, of course, not to be denied that foreign insurance companies engaged in the business of this association may transact business in this State, for Section 680 expressly confers this privilege upon the conditions named in the section. It would, therefore, appear that when a foreign association has complied with all of the conditions named in Section 680, it is entitled to do business in this State, unless, as the section provides, the Commissioner is satisfied "that the affairs and business of such corporation or association are in an unsound condition, or its business not carried on within the limits and restrictions of its organic law, or that any of the terms, conditions or by-laws have been or are being violated, or that said corporation shall refuse to permit a full examination of its affairs to be made when deemed necessary by the Commissioner." But these reasons for excluding the association we may put aside, as it is admitted by the demurrer that none of them existed, and so we must look to other sections of the law for the purpose of ascertaining if the charter of this association was inconsistent with or obnoxious to the insurance or other laws of this State.

Section 202 of the Constitution provides that "No corporation organized outside the limits of this State shall be allowed to transact business within the State on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this Commonwealth." And it is suggested in argument that this association, if it obtains permission to do business in this State, will be allowed to transact its business on more favorable conditions than are prescribed by law for similar corporations organized under the laws of this Commonwealth. But we do not think so. It is not necessary that any foreign corporation, insurance or otherwise, seeking authority to do business in this State, should be incorporated or organized according to the forms prescribed for the incorporation or organization of domestic corporations. The laws of each State differ in respect to the manner in which corporations may be incorporated and organized to transact business, and when a foreign corporation seeks admission into this State it should not be denied admission merely

because the laws of the State in which it was incorporated and organized provide methods of incorporation or organization different from the laws of this State, unless it should be that the laws of the other State under which it was incorporated are so obnoxious to the laws of this State as that it would be against the public policy of this State to permit the foreign corporation to engage in business in this State.

Section 202 of the Constitution is only intended to regulate and control the affairs of the foreign corporation after it comes into this State. Under this section when a foreign corporation comes into this State, no matter how it was incorporated or organized in another State, it will be subject to the laws of this State and cannot do business in this State on more favorable conditions than like domestic corporations; and we do not understand that this association assumes the right to transact business in this State on more favorable conditions than like domestic associations or corporations. When it comes into this State it will be subject to the laws of this State and under the supervision and control of the Insurance Department of the State in the same manner as like domestic companies.

Sections 752 and 753 of the Kentucky Statutes give the Commissioner ample power to protect the people of the State against foreign companies that are not in a sound condition or that fail or refuse to comply with the law of this State, and for the purpose of ascertaining whether or not the foreign company is in sound condition the Commissioner may examine into its affairs, and if he finds that it is in an unsound condition, or that it fails to comply with the law of this State, or that it is not carrying on business within the restrictions and limits of its organic law, or that any of the terms or conditions of its by-laws are being violated, the Commissioner is empowered under these sections to revoke its privilege of doing business in this State. Mutual Life Insurance Co. of New York v. Prewitt, 127 Ky., 399. So that the mere fact that this association, under the showing made in its petition for a mandamus, is entitled to do business in this State, does not, in any manner, interfere with the right of the Commissioner to compel it to do business in conformity with the laws of this State and the provisions of its charter and by-laws or to at any time exclude it from the State if it is doing

business in violation of our laws or in a manner not authorized by its charter or by-laws, or if its affairs, for any reason, become in an unsound condition.

It may be, and probably is, true that the laws of this State relating to this class of insurance companies do not afford to policy-holders the protection that insurance laws should afford, and it is evident that the Legislature believed the laws regulating this class of companies were inadequate, because, in 1912, it attempted to amend the existing law and furnish better security for policy-holders; but this act, on account of its insufficient title, was declared unconstitutional in the case of Hall v. Clay, Insurance Commissioner, 162 Ky., 197.

This association has provided, or offered to provide, the same security for policy-holders that domestic companies of like character are required to provide, and it appears from the petition that there is nothing in its charter or by-laws that allows it to transact business on different terms or in a different manner from domestic companies. In short, it seems to us that this association is only asking the privilege of doing business in this State in the manner and according to the method in which domestic companies of like character are permitted to transact business.

It is said, however, that the charter provisions conferring upon the five stockholders of the association the absolute control of its affairs are obnoxious to or in conflict with the laws of this State regulating like domestic companies, and, therefore, the Commissioner was warranted in refusing it admission. In support of this view attention is called to Sections 667 and 675 regulating the place and manner in which assessment associations or companies shall hold meetings and elect officers and prescribing other details in the conduct of the business; but these sections, at least in so far as they relate to the election of officers and meetings of policy-holders, refer to domestic corporations, and the mere fact that the officers of this association are under the absolute control of the board of directors does not in itself furnish a reason why it should be denied the right to do business in this State.

Upon the case as made out by the record before us, we think the association is entitled to the relief sought, and, therefore, the judgment is reversed, with directions to overrule the demurrer and for proceedings in conformity with this opinion.