## Allin, Ins. Com'r, v. American Indemnity Co.

(Decided Dec. 9, 1932.)

BAILEY P. WOOTTON, Attorney General, and WM. R. ATTKISSON, Assistant Attorney General, for appellant.

CHARLES W. MORRIS and FRANK A. GARLOVE for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal from a judgment of the Franklin

circuit court, rendered on the 5th day of March, 1932, in which it granted to the appellee (plaintiff below), the American Indemnity Company, a writ of mandamus against appellant (defendant below), Bush W. Allin, insurance commissioner for the State of Kentucky, commanding him to grant to the plaintiff, American Indemnity Company, the authority and license to make and write insurance in the State of Kentucky upon automobiles and all other cars and vehicles, including public liability, property damage, collision, fire, burglary, and theft insurance, and to insure the owners of such automobiles and all other cars and vehicles against such losses as arise out of the ownership, operation, or maintenance of the same, and generally to do and perform all other matters and things proper to promote these objects.

The cause was heard in the lower court upon the plaintiff's petition, motion for a writ of mandamus and the defendant's demurrer thereto, and the agreed stipulation of facts filed therewith.

The agreed facts thereby appearing are as follows: The American Indemnity Company is a corporation organized under the laws of the State of Texas, with power to write all types of automobile insurance and had for many years been admitted to do such business in the State of Kentucky. On December 31, 1931, a merger was entered into by and between the American Indemnity Company and the American Fire & Marine Insurance Company, whereby the latter company was dissolved and ceased to exist; whereupon, the American Indemnity Company amended its articles of incorporation so that it was authorized and entitled under the laws of the State of Texas to insure, in addition to its automobile insurance business, houses, buildings, and other kinds of property against loss or damage by fire, lightning, or storm, and to make all kinds of insurance on goods, merchandise, and other property in course of transportation, whether on land or water or on any vessel or boat, wherever the same may be. After the merger, the American Indemnity Company applied to the insurance commissioner for the State of Kentucky for a license to write insurance upon automobiles and all other cars as above set out. The insurance commissioner refused to issue the license solely and entirely upon the reason that by its amended articles of incorporation, authority had been given to the said Ameri-

can Indemnity Company to insure houses, etc., against loss or damage by fire, lightning, or storm.

We have hereinabove adopted appellant's statement of facts as made in his brief, which is admitted by appellee to be a proper statement thereof.

Appellant by his appeal here presents the question as to whether, under the facts above stated, the commissioner was justified in denying the license applied for, which he contends he was, and therefore that the judgment of the Franklin circuit court, in commanding him to issue the license, should be reversed, for the reason that the American Indemnity Company should be denied a license to do business in the State of Kentucky and the insurance commissioner permitted to deny the license here applied for, where the law under which an insurance company applying therefor is incorporated is in its essence repugnant to the public policy of this state.

Under section 634, Kentucky Statutes, every insurance company not organized under the laws of this state is required to manifest certain things to the insurance commissioner. It then provides:

"And the commissioner, upon being satisfied that such company has fully complied with the laws of this state, and is possessed of the legal reserve, shall furnish to such agents as the company directs a license to transact business as agent for said company under the seal of the insurance department."

Further, by sections 752 and 753 of the Statutes, ample power is given the commissioner to protect the people of the state against foreign companies and to revoke the licenses of those found not to be in sound condition or that fail or refuse to comply with the laws of the state when admitted to do business in this state.

The duty and authority of the insurance commissioner, by virtue of his office, is well set out in the case of Mutual Life Insurance Company of New York v. Prewitt, Insurance Commissioner, 127 Ky. 399, 105 S. W. 463, 465, 32 Ky. Law Rep. 298, where this court said:

"The insurance commissioner is the creature of the statute. He has no authority except that which the statute confers upon him. In the state of case

in which the statute authorizes him to revoke a license, his discretion, unless exercised arbitrarily, cannot be controlled by injunction; but, when he undertakes to act in a state of case in which the statute gives him no authority to act, he may be controlled by injunction. He is a ministerial officer, and his acts beyond the authority conferred upon him by law have no force. The law is the source of his authority and all of his acts must be within the limits of that authority. It is the province of the courts to construe the statute, and determine the scope of his authority.''

The commissioner in the instant case justifies his refusal to grant a license to the American Indemnity Company upon the grounds that it would be against public policy to permit the appellee company to transact business in this state, as it has been authorized by its Texas charter to write both fire and automobile insurance, which is a right not given by the laws of Kentucky to its domestic companies. His ground assigned for his action requires us to inquire and determine whether the public policy of the state in this regard is as by him asserted to be.

In the case of Eversole v. Eversole et al., 169 Ky. 793, 185 S. W. 487, 489, L. R. A. 1916E, 593, this court said:

''The public policy of a state is determined by its Constitution and statutes, and, where these are silent, by the decisions of its courts. Chreste v. Louisville Railway Company, 167 Ky. 75, 180 S. W. 49 (L. R. A. 1917B, 1123, Ann. Cas. 1917C, 867); Union Central Life Insurance Co. v. Spinks, 119 Ky. 261, 83 S. W. 615, 26 Ky. Law Rep. 1205, 84 S. W. 1160, 27 Ky. Law Rep. 325, 69 L. R. A. 264, 7 Ann. Cas. 913; Davies v. Davies, 50 N. J. Eq. 761, 26 A. 978, 21 L. R. A. 617, 35 Am. St. Rep. 793. Hence, when the Legislature speaks within the limits of the Constitution, its declaration of public policy is conclusive.''

We must therefore now refer to the statutory and constitutional provisions wherein it has clearly spoken, and as directed in the Eversole Case, supra, for a determination of what is the state's public policy therein announced as to the granting of a license upon the agreed facts as here presented:

Section 687 of the Statutes provides that:

"It shall be lawful for any company organized under this law:

" 'First. To insure houses, buildings and all other kinds of property against loss or damage by fire, lightning or storm, and to make all kinds of insurance on goods, merchandise and other property in course of transportation, whether on land or water, or, on any vessel or boat, wherever the same may be.

" 'Second. To make any of the following kinds of insurance: * * * (9) upon automobiles and all other cars and vehicles, including public liability, property damage, collision, fire and burglary and theft insurance, and to insure the owners of such automobiles and all other cars and vehicles against such losses as arise out of the ownership, operation or maintenance of the same, and generally to do and perform all other matters and things proper to promote these objects; provided, that no company organized under this law for the purposes named in the first clause of this section shall undertake either of the risks mentioned in the second clause hereof; and no company organized under this law for either of the purposes mentioned in the second clause, shall undertake any business mentioned in the said first clause, nor shall any such company undertake to do more than one of the several kinds of insurance mentioned in said second clause except as hereinafter provided; and no company organized under this law shall undertake any business or risks not provided for herein.' "

Thus it is seen from the foregoing statute that no domestic corporation can insure houses, etc., against loss by fire and at the same time write what we may here term "automobile insurance," and such being the case, appellant contends that no foreign insurance company should be permitted to write these two classes of risk, by virtue of the provisions of section 202 of the Constitution, which provides:

"No corporation organized outside the limits of this state shall be allowed to transact business within the state on more favorable conditions than

are prescribed by law to similar corporations organized under the laws of this Commonwealth."

We are of the opiinon that under this provision it might well be held that a foreign company could not here be permitted to write both fire and autoombile insurance; but such is not the question raised upon this appeal, as the appellee is here only seeking, under the license applied for, to write automobile insurance, or only one of the two classes of insurance as a domestic company is authorized by section 687 of the Statutes.

It is admitted that the appellee company has been for years engaged in the writing of this class of insurance in this state, under a license issued it by the commissioner, and that it is now only attempting to obtain permission to continue writing the one and same class of insurance.

That provision of section 202 of the Constitution that foreign corporations shall not be allowed to transact business within the state on more favorable conditions than are prescribed by the laws of Kentucky to similar domestic corporations, when fairly interpreted, should not be construed to mean that such foreign corporations shall not be allowed to transact business within the state when writing only the one class of insurance, as domestic corporations by the state laws are permitted to write, or that in so permitting, the state would be allowing foreign corporations to transact business within the state under more favorable conditions than given its domestic companies to write the same class of insurance.

In the case of National Benefit Association v. Clay, 162 Ky. 409, 172 S. W. 922, 924, the insurance company sued for a writ of mandamus against the insurance commissioner to compel him to issue it a license to do business in this state. The commissioner there admitted, just as here it is admitted, that the reserves and the deposits of the insurance company were satisfactory, but denied the license upon the grounds that the charter of the insurance company "does not conform to the laws of this state and is inconsistent with our laws." The court in the course of its opinion said:

"It is not necessary that any foreign corporation, insurance or otherwise, seeking authority to do business in this state, should be incorporated or

organized according to the forms prescribed for the incorporation or organization of domestic corporations. The laws of each state differ in respect to the manner in which corporations may be incorporated and organized to transact business, and when a foreign corporation seeks admission into this state it should not be denied admission merely because the laws of the state in which it was incorporated and organized provide methods of incorporation or organization different from the laws of this state, unless it should be that the laws of the other state under which it was incorporated are so obnoxious to the laws of this state as that it would be against the public policy of this state to permit the foreign corporation to engage in business in this state.

"Section 202 of the Constitution is only intended to regulate and control the affairs of the foreign corporation after it comes into this state. Under this section, when a foreign corporation comes into this state, no matter how it was incorporated or organized in another state, it will be subject to the laws of this state, and cannot do business in this state on more favorable conditions than like domestic corporations; and we do not understand that this association assumes the right to transact business in this state on more favorable conditions than like domestic associations or corporations. When it comes into this state it will be subject to the laws of this state and under the supervision and control of the insurance department of the state in the same manner as like domestic companies."

We deem the reason given by the court for its decision in this quoted case as rightly here applicable, and as authorizing it to be here said that the commissioner is not concerned with the question of the charter powers of the appellee company, whereby it is authorized to write both fire and automobile insurance in states so permitting it, but his proper inquiry is, what is the business, proposed by the company applying for a license, to be transacted in this state, and is it one not allowed by the laws of this state, or, if licensed, would he thereby be permitting a foreign corporation to transact its licensed business within the state under

more favorable conditions than granted domestic corporations in a similar business?

Clearly, in granting the license sought by appellee, to write "automobile insurance," or this one class of business, in common with other insurance companies, both domestic and foreign, in the state writing it, the commissioner is not conferring upon appellee, a foreign insurance company, the right of here transacting business under more favorable or different conditions from the like right granted its own domestic companies. Certainly its charter right given it, under the Texas law, to write both fire and automobile insurance in other states so permitting it, cannot be held to here afford it more favorable conditions under which to write the one class of insurance, for which license is asked, than is enjoyed by domestic companies—also given the like right of writing but one of the two statutory classes of insurance permitted by section 687 of the Statutes—therefore the Texas law cannot be held repugnant to that Kentucky law or the public policy thereof, inasmuch as it does not serve to amplify appellee's right under its charter to exercise larger or different powers than those given domestic companies under the Kentucky law and policy.

Such being our conclusion as to this, it must follow that as the commissioner's granting of the license applied for would contravene neither our constitutional nor statutory provisions, it is not against the public policy of the state, nor is it such upon the ground assigned by appellant that inasmuch as by its charter powers given it under the laws of the State of Texas, where incorporated, it has the right to write both automobile and fire insurance in other states where permitted to do so. This larger right, given it to operate in Texas and other states so authorizing it, affords it no advantage over domestic companies when operating in Kentucky when here confined by and restrained under its laws to writing but the one kind of insurance, as it has here applied for.

Such being our conclusion, it follows that the learned chancellor below properly interpreted and applied the law applicable to the case at bar and therefore rightly commanded the appellant insurance commissioner to issue appellee the license applied for.

Therefore the judgment is affirmed.