## Goodpaster, Director of Insurance, v. Southern Ins. Agency, Inc.

Feb. 26, 1943.

Dick M. Wheat for appellant.

Ogden, Galphin, Tarrant & Street for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

The appellant and defendant below, Hon. Sherman

Goodpaster, Director of Insurance of Kentucky (hereinafter referred to as the Director), promulgated two rules applicable to fire insurance: (1) That no resident insurance agent's license would be issued to an employee of a finance company or of a building and loan company; (2) that no corporation, a majority of whose stock is owned by non-residents, would be issued such license. The Southern Insurance Agency, a Kentucky corporation, brought this declaratory judgment action in the Franklin Circuit Court under Section 639a—1 et seq., of the Civil Code of Practice to determine whether or not the Director had authority to promulgate these two rules. The chancellor adjudged that he had no such authority and the Director appeals.

The case was tried on a stipulation which shows these facts. The Southern Commercial Corporation (hereinafter referred to as Commercial) existed under the laws of Indiana with authority to engage in what is commonly known as automobile financing, to act as an insurance agent, and it was duly licensed as such agent in Indiana. The company had qualified to do business in Kentucky. Its principal place of business in this State was a Paducah, and J. P. Thomas, an employee of Commercial, held a resident insurance agent's license to write insurance in Kentucky for the Fidelity & Phoenix Fire Insurance Company. The purchaser of a car as a prerequisite of obtaining a loan was required to insure the car against loss by fire and theft in favor of the seller as its interest appeared; and if requested by the seller, to purchase insurance against collision. Practically all the insurance Thomas wrote was on cars financed by Commercial and he divided his commissions with that company which paid him a salary to cover his commissions. The cars were financed under conditional sale agreements providing that the title remained in the seller until the purchase price was satisfied, and the notes and sale agreements were assigned to Commercial without recourse, which in turn assigned same to the First National Bank of Evansville, Ind.

The Director complains that Thomas was violating the insurance agency laws of Kentucky, Sections 298.190, 298.230 KRS. Thomas and Commercial denied their arrangement infringed upon the law, but to obviate the complaint a Kentucky corporation, Southern Insurance Agency (hereinafter referred to as Southern), was form-

ed in November 1940, in which Thomas became a stockholder and held the office of assistant secretary. Thomas was a licensed resident insurance agent and as such conducted and carried on Southern's business of resident insurance agent as is provided in Section 298.190 KRS. The majority of the stock in Southern was held by nonresidents and by the same persons who owned the stock of Commercial.

On June 7, 1940, the Director published an order that no resident insurance agent's license could be held by employees of finance companies or of building and loan associations. On September 19, 1940, he published an order to the effect that such license would be refused a domestic corporation, the majority of whose capital stock is owned or controlled by a foreign corporation or by residents of another state. On January 6, 1941, the Director revoked a resident agent's license issued Thomas on December 2, 1940, for a period of one year on the ground that Southern could not engage in the business of a resident insurance agent in Kentucky because a majority of its stock was owned by non-residents. This action was brought to test the authority of the Director to make such orders, and the chancellor held he had no such authority.

It is urged by the Director: (1) That on account of certain abuses or illegal acts of some automobile finance companies engaged in the insurance agency business, he was authorized under the police power to make the two rules above mentioned to divorce the finance business from that of insurance agencies; (2) that the receipt of dividends by the stockholders of Southern was a rebate under Section 298.230 KRS; (3) that Southern was formed as a subterfuge to circumvent the two rules promulgated.

Section 298.190 KRS authorizes a domestic corporation to engage in the business of insurance agent and Sections 298.200 and 298.220 authorizes the Director to prescribe rules and regulations as therein mentioned in respect to the business, and to suspend or revoke a license for certain designated violations of the insurance laws therein enumerated. Neither of these sections confer upon the Director authority to say that an employee of a finance company or of a building and loan association cannot engage in the business of an insurance agent, or that a corporation cannot do so where a majority of

its stock is owned by non-residents. The Director holds a statutory administrative office and the only authority he possesses is that delegated to him by the Legislature through the statute under which he acts. Allin v. American Indemnity Co., 246 Ky. 396, 55 S. W. (2d) 44. Without doubt, the Legislature may authorize a board or administrative officer, such as appellee, in charge of some governmental affairs, to make police regulations, but it cannot abdicate its own police power on any subject and confer such power on an officer or a board to his or its uncontrolled discretion. 12 C. J. 911, Section 420; 16 C. J. S., Constitutional Law, Section 178; 11 Am. Jur. 988, Section 256; Bloemer et al. v. Turner et al., 281 Ky. 832, 137 S. W. (2d) 387. We do not mean to say that the Legislature would be authorized under its police power to forbid an employee of a finance company or of a building and loan association to engage in the business of an insurance agent, or that it could forbid a domestic corporation from so doing because a majority of its stock was foreign held. . It may be doubted if such an act of the Legislature would be upheld under the authorities, of which Hauser v. North British & Mercantile Ins. Co., 206 N. Y. 455, 100 N. E. 52, 42 L. R. A., N. S., 1139, Ann. Cas. 1914B, 263, is one. But we do hold that the Director has no authority under the police power, or otherwise, except that especially delegated to him by the Legislature through statutes under which he acts, and then only for regulatory purposes.

We are not in accord with appellant's argument that Thomas in turning over all commissions to Southern and accepting a salary in lieu thereof, or that the receipt of dividends by the stockholders of Southern, is rebating within the meaning of and prohibited by Section 298.230 KRS. This very question has been determined adversely to appellant's contention in Rogers v. Ramey, 198 Ky. 138, 248 S. W. 254, and Saufley v. Botts, 209 Ky. 137, 272 S. W. 408. Appellant attempts to distinguish the instant case from Rogers v. Ramey on the ground that here Southern insured its own property, while in the Ramey case the agent did not limit the insurance he wrote to the property of his employer. Evidently, appellant has failed to recognize that Southern is a separate and distinct corporation from Commercial, the latter having title to the property, while the former had no interest therein and was exclusively engaged in the business of an insurance agent. The Ramey case held it was not

rebating for an officer of a corporation engaged in the business of an insurance agent to deliver his commissions to the corporation and receive a salary for his services. It further held that receipt of dividends by stockholders of a corporation engaged in the business of an insurance agent was not rebating within the meaning of Section 298.230 KRS.

Appellant insists that Southern was formed by the stockholders of Commercial merely as a subterfuge and to circumvent Section 298.190 KRS and allow Commercial to obtain a resident agent's license through Southern. We are asked to ignore what appellant terms the corporate fiction of Southern and to draw aside its veil as a corporate entity and to hold that it is but Commercial clothed in different raiment, citing Louisville & N. R. Co. v. Carter, 226 Ky. 561, 10 S. W. (2d) 1064; Markell v. Hilpert, 140 Fla. 842, 192 So. 392; State v. Safford, 117 Ohio St. 576, 159 N. E. 829. An examination of these authorities shows they hold that where one corporation is owned or so controlled by another as to make it but a sham or dummy for the former, the courts, where necessary to promote justice, will ignore the corporate fiction of the dummy and seize upon the real corporate entity. But here we have no such situation. Southern was separate and distinct from Commercial and was neither owned nor controlled by it. The fact that practically the same stockholders owned both corporations does not affect the corporate entity of the two companies, nor reduce Southern to the status of being a sham or dummy for Commercial.

The instant case is clearly distinguishable from State v. Safford, 117 Ohio St. 576, 159 N. E. 829. There Marsh & McLennan, Inc., had license to do business in Ohio as a foreign insurance broker. This corporation subscribed to the majority of the stock of an Ohio corporation for the purpose of obtaining a local agent's license in Ohio. But it was refused a local license, the court saying that as the foreign corporation (Marsh & McLennan) could not obtain a local license under Ohio law it could not evade the Ohio statute by subscribing to a majority of the stock of an Ohio corporation, give up its license as a foreign broker and thus come into that State as a local insurance agent—that Marsh & McLennan could not do indirectly what they were forbidden to do directly. In the instant case the majority of

Southern's stock was not owned by Commercial but by the stockholders of the latter. Commercial was not attempting to enter Kentucky as a local insurance agent through a dummy corporation. Commercial had no connection with Southern although both were largely owned by the same stockholders. As stated above, it is quite a different situation where one corporation owns the majority of the stock of another from that where the majority of stock in both are owned by the same persons.

The judgment is affirmed.