THE BANKERS DEPOSIT GUARANTY AND SURETY COMPANY, *Plaintiff*, v. CHARLES W. BARNES, *as Superintendent of Insurance of the State of Kansas, Defendant.* THE STATE OF KANSAS, *ex rel. Fred S. Jackson, as Attorney-general, Intervenor.*

No. 16,629.

SYLLABUS BY THE COURT.

1. CORPORATIONS — *Guaranteeing Payment of Bank Deposits.* The provisions of section 1 of chapter 159 of the Laws of 1905, relating to the incorporation of surety, fidelity and guaranty companies, is by necessary inference applicable to the incorporation of companies organized in this state for the purpose of guaranteeing the payment of deposits in state and national banks.

2. ——— *Certificate of Authority to do Business from the Superintendent of Insurance.* All of the steps to be taken and all the requirements to be met to entitle a company which has been granted a charter by the charter board of the state for such purpose to obtain a certificate of authority to do business in this state are prescribed in section 3 of the above act, and

in sections 3419, 3420, 3421 and 3422 of the General Statutes of 1901, which by reference in the act of 1905 are applicable in connection therewith.

3. ———— *Discretion of Superintendent to Impose other than Statutory Requirements.* When the corporation organized for such purpose has complied with all the prerequisite statutory requirements it is the duty of the superintendent of insurance to furnish the company with a certificate of authority for it to commence the business proposed in the charter (Gen. Stat. 1901, § 3422), and such superintendent has no discretion to impose any other requirement as a condition precedent to the issuance of such certificate.

Original proceeding in mandamus. Opinion filed December 11, 1909. Writ allowed.

*John E. Hessin,* and *J. W. Gleed,* for the plaintiff.

*Fred S. Jackson,* attorney-general, for the defendant and the intervenor.

The opinion of the court was delivered by

SMITH, J.: The plaintiff procured from the state charter board a charter which specified, among other purposes of the corporation, the following:

"To guarantee the fidelity of persons holding offices of public or private trust, to execute and guarantee bonds and undertakings in judicial proceedings, and to guarantee the faithful performance of any and all public, official and private duties. It being the purpose and intent of said corporation to insure and guarantee payment of deposits in state and national banks to their depositors."

After obtaining such charter the company applied to the superintendent of insurance for a certificate of authority to do business in the state. The superintendent refused the application and assigned several reasons therefor. On the filing of the application by the company in this court for a writ of mandamus to compel the issuance of the certificate an alternative writ was allowed, and the superintendent thereafter filed his answer, in which he admits that the objections which

he made in refusing to allow the application had been removed, except one, namely, that the laws do not permit the incorporation of a company for the purposes for which the plaintiff was incorporated. In his answer he makes the further objection, in substance, that in the charter there is no limit to the rate of interest which may be charged by the banks the payment of whose deposits are to be guaranteed; that he believes that much harm might result to the persons participating therein, either as insured or insurer, and to the people of the state, unless such business is carefully and strictly regulated and the risks undertaken by the insurer are carefully selected under reasonable regulations strictly enforced; that he believes he has authority as such superintendent, in the exercise of his discretion, to provide rules forbidding the company to accept risks and insure the deposits of any bank which accepts deposits bearing a greater rate of interest than three per cent per annum; that he believes it to be his duty to impose such a regulation upon the plaintiff or any other company transacting such business within the state. The superintendent further asks that he be not required to furnish the plaintiff with the certificate of authority prayed for if the court shall find that the plaintiff is legally incorporated, unless he further be allowed to prescribe as a condition precedent to the issuance of such writ of authority such regulation in regard to the rate of interest to be charged by banks accepted as risks.

The attorney-general intervenes on behalf of the state and objects to the allowance of a peremptory writ of mandamus on substantially the same grounds as are urged by the superintendent of insurance.

To determine whether the plaintiff was entitled to the charter issued to it we are referred to chapter 159 of the Laws of 1905, section 1 of which reads as follows:

"That in addition to the purposes for which corporations may be formed under existing laws of this state, private corporations may also be formed for the pur-

pose of guaranteeing the fidelity of persons holding offices of public or private trust, to execute and guarantee bonds and undertakings in judicial proceedings, and to guarantee the faithful performance of any and all public, official or private duties."

On reading this section it will be observed that it authorizes the formation of private corporations for three separate and distinct purposes other than the purposes for which corporations may be formed under the then existing laws of the state, namely: First, "for the purpose of guaranteeing the fidelity of persons holding offices of public or private trust." This clause relates exclusively to persons holding offices of public or private trust. Second, "to execute and guarantee bonds and undertakings in judicial proceedings." Under this clause the bond or undertaking in a judicial proceeding of a person, copartnership or corporation might be guaranteed. Third, "and to guarantee the faithful performance of any and all public, official or private duties." This provision is very broad. It is difficult to conceive of a breach of duty which might result in a monetary loss which may not be insured under this provision, whether the duty rested upon individuals or associations. The word "duty" is thus defined in volume 3 of Words and Phrases Judicially Defined, at page 2284: "One's duty is what one is bound or under obligation to do." Accepting this as a correct definition, and applying it to the third clause, it seems to authorize the formation of a corporation to guarantee the performance by any person, corporation or association of persons of any and all public, official or private obligations which are legally assumed or imposed by law upon such person, corporation or association and the breach of which may result in a monetary loss. One of the principal purposes of a bank, either state or national, is to receive deposits of money from persons, corporations or associations and to repay such deposits on demand or at such time as may be agreed upon. This is unquestionably a private duty of the bank, and

we think that the section of the statute in question by necessary inference authorizes the formation of a corporation for the purpose of insuring and guaranteeing the payment of deposits in state and national banks to their depositors.

The superintendent of insurance is the head of one of the executive branches of the state government, and as such in many matters pertaining to his department is expressly granted by statute great latitude of discretion, and in certain other matters by reasonable implication he has also great latitude of discretion. The office of superintendent of insurance is created by statute, and the extent of the powers and the limitations thereof are to be determined by the provisions of the statute, construed of course liberally for the purpose of enabling this department effectively to discharge the duties assigned to it. To determine intelligently, therefore, whether the superintendent of insurance has the power to prescribe any requirement as a condition precedent to the issuance of the certificate of authority prayed for by the plaintiff we must consult the statute applicable thereto. Section 3 of chapter 159 of the Laws of 1905 reads as follows:

"Upon being granted a charter by the charter board, such corporation shall not transact any business in the state until it shall have, in addition thereto, complied with the laws of this state governing life-insurance companies so far as applicable, and shall obtain from the superintendent of insurance authority to do business in the same manner and upon payment of the same fees required of life-insurance companies organized under the laws of this state."

The laws of this state governing life-insurance companies to which reference is made in the foregoing section are sections 3419, 3420, 3421 and 3422 of the General Statutes of 1901, which read as follow:

SEC. 3419. "Every company or corporation formed or organized pursuant to chapter 23 of the General Statutes of 1868 for the purpose of making insurance on the lives of individuals shall file in the office of superin-

tendent of insurance a copy of its charter, duly certified by the secretary of state, and it shall also file a copy of its by-laws, which shall set forth the number of its directors or trustees, which shall not be less than five nor more than twenty-five, and the manner of electing the same, and their term of office respectively, a majority of whom shall be citizens of this state, the times of holding elections, and the manner of filling vacancies. And every such company shall thereafter have power to make insurance on lives of individuals, and every assurance pertaining thereto or connected therewith, and to grant, purchase and dispose of annuities and endowments of every kind and description whatever.

Sec. 3420. "Whenever the corporators shall file such charter and by-laws with the superintendent of the insurance department, they shall cause notice of their incorporation and the names and residences of their directors and their place of business to be published in a paper of general circulation in the county in which the office of the company is to be located, for four weeks successively; they may then proceed to open books for subscription to the capital stock of the company, and keep the same open until the whole amount specified in the charter is subscribed; but it shall not be lawful for such company to issue policies or transact any business of any kind or nature whatsoever until they have fully complied with all the requirements of this act, which fact shall be certified by the superintendent of the insurance department.

Sec. 3421. "Upon being notified that the capital stock named in the charter has been subscribed, and one hundred thousand dollars thereof paid in, the superintendent shall make an examination, or cause the same to be made by some disinterested person specially appointed by him for that purpose; and if it shall be found by himself, or if the person so appointed shall certify under oath, that the provisions of this act have been complied with by said company so far as applicable thereto, which certificate, when made, shall set forth the particulars of such compliance, then the superintendent shall so certify. The corporators or officers of such company shall be required to certify under oath to the person making such examination that the money, notes, stocks, bonds, mortgages and deeds of trust and obligations exhibited to him are the *bona fide* property of said company.

SEC. 3422. "When the corporators have fully complied with the requirements of the preceding sections, and said corporation has deposited with the treasurer of state [$100,000] the amount of capital required to be deposited by the provisions of this act, it shall be the duty of the superintendent of insurance to furnish the company a certificate of such deposit, and a certificate of authority for it to commence the business proposed in its charter, which, on being filed and recorded in the office of the register of deeds of the county in which the company is to be located, shall be its authority to commence business and issue policies; and such certified copies of the declaration and certificate of deposit may be used in evidence for or against said company with the same effect as the originals."

There has been an amendment to section 3421 as to the amount of capital stock necessary to have been subscribed, but that is immaterial in this case, as it is conceded that the corporation has complied with the statute as amended.

Every step necessary to be taken and every requirement to be met to entitle the plaintiff to a certificate of authority to commence business seems to be specified in these sections of the statute. And the defendant admits that all these provisions have been complied with. Section 3422 especially provides:

"When the corporators have fully complied with the requirements of the preceding sections, and said corporation has deposited with the treasurer of state [$100,000] the amount of capital required to be deposited by the provisions of this act, it shall be the duty of the superintendent of insurance to furnish the company a certificate of such deposit, and a certificate of authority for it to commence the business proposed in its charter."

Whether the regulation proposed by the superintendent of insurance be or be not desirable as a safeguard to the people of the state, we can not, considering the provisions of these statutes, reasonably infer that the legislature intended to leave anything to his discretion in the matter. On the other hand, it seems that the leg-

islature has prescribed every step and requirement to be taken by or demanded of the applicant to entitle it to a certificate of authority to do business, and has provided that upon the taking of these steps it shall be the duty of the superintendent of insurance to issue a certificate of authority. The statute seems indeed to be an express negation of any further requirement.

We are referred to *The State, ex rel., v. Ins. Co.*, 30 Kan. 585, *Insurance Co. v. Wilder*, 40 Kan. 561, and *Insurance Co. v. Wilder*, 43 Kan. 731, as authorities upon the question of discretion of the superintendent of insurance. These cases all related to mutual fire-insurance companies, and rested upon statutes quite different from the statutes relating to life-insurance companies quoted above. *The State, ex rel., v. Ins. Co.* simply held that the state has the right to say who may engage in the business of insurance, and upon what terms. In the case of *Insurance Co. v. Wilder*, the court held that the matter of authorizing fire-insurance companies to transact business in the state involved the exercise of official judgment and discretion on the part of the superintendent of insurance, which discretion can not be controlled or directed by mandamus. In the later case of *Insurance Co. v. Wilder* the statute had been materially modified, although it granted a much larger discretion than do the statutes involved in this case, and the court therein held that the determination of the superintendent of insurance in granting, refusing or revoking the authority of the mutual fire-insurance company to do business on account of insolvency or noncompliance with the laws of the state is not final, but his action in that regard is subject to inquiry and control by the court. These authorities recognize that the question of discretion in the superintendent of insurance is to be determined by the statutes granting or omitting to grant the authority, and in this respect only are these decisions relevant to the questions here involved.

We find that the superintendent of insurance in this

case is not vested with any authority to impose any requirement beyond those prescribed by the statute as a condition precedent to the issuance of a certificate of authority to the plaintiff to do business in this state. The peremptory writ of mandamus is allowed as prayed for, and judgment given against the defendant for costs.