A. O. LLOYD, Appellee, v. W. C. RAMSAY, Secretary of State, et al., Appellants.

**CORPORATIONS:** Articles—**Right of Secretary of State to Refuse to File.** The legislature has ample power to authorize, and has authorized, the secretary of state, in the first instance, and the executive council, as an appellate body, in passing on articles of incorporation and the filing thereof, to determine, not only whether such articles are in proper *form* and propose a *legal* business, but also the broad question whether such business, under its proposed articles, is *honest,* or *against public policy,* or *otherwise objectionable,* and to refuse to file articles which do not meet such test. (Sec. 1610, Code Supp., 1913.)

**CERTIORARI:** Refusal of Secretary of State to File Articles. Certiorari will lie to test the legality of the action of the secretary of state in refusing to file articles of incorporation.

*Appeal from Polk District Court.*—JAMES C. HUME, Judge.

JUNE 22, 1921.

REHEARING DENIED OCTOBER 1, 1921.

APPEAL from a decree in a suit in certiorari, to review the action of the secretary of state and the executive council of the state of Iowa in refusing to file certain articles of incorporation. —*Reversed.*

*Ben J. Gibson,* Attorney General, and *W. R. C. Kendrick,* Assistant Attorney General, for appellants.

*Miller, Kelly, Shuttleworth & Seeburger,* for appellee.

FAVILLE, J.—The appellant W.-C. Ramsay is secretary of state; the appellant Nathan E. Kendall is governor; W. J. Burbank is state treasurer; and Glenn C. Haynes is state auditor;

1. CORPORATIONS: articles: right of secretary of state to refuse to file.

and said four officials constitute the executive council of the state of Iowa. On or about the 19th day of January, 1921, the appellee caused to be filed in the office of the county recorder of Polk County, Iowa, for record, certain articles of incorporation, executed by himself, as sole incorporator, and seeking to incorporate under the name and style of the ''Federal Oil Company.'' After said articles of incorporation had been filed and recorded in the office of the county recorder of Polk County, Iowa, they were presented by the appellee to the secretary of state, for the purpose of having the same approved and filed, and a certificate issued by the said secretary of state. On or about January 19, 1921, the secretary of state notified the appellee of his disapproval of said articles of incorporation, and informed the appellee how the articles could be amended so that the same would meet with his approval. Shortly thereafter, the appellee commenced an action against the said secretary of state, praying for a writ of mandamus, to compel the secretary to file said articles. A demurrer to the appellee's petition in mandamus was sustained by the court, and thereafter the secretary of state submitted said articles of incorporation to the executive council of the state, as provided by Section 1610 of the Code and amendments thereto. In so submitting the same to the executive council, the secretary of state advised said executive council that:

''Inasmuch as the two classes of stock were so disproportionate, it occurred to me that the preferred stock was preferred

in name only; and for this reason; on the ground of public policy, I refused to file said articles.''

Thereafter, a hearing was had before said executive council, and the records of said executive council in respect to said matter recite:

''After giving due consideration to the evidence submitted and arguments of counsel, Auditor Haynes moved that the council not approve the articles of incorporation of the Federal Oil Company as the said articles were contrary to good business practice,''—which motion was duly carried.

Thereafter, the appellee amended his petition in said original action, and made the members of the executive council parties defendant, and prayed that a writ of certiorari be issued from the district court of Polk County, Iowa, commanding said defendants to certify to said court all of the records and proceedings in reference to said articles of incorporation, and asking that the order of said executive council be canceled, and that an order be issued, requiring the executive council to accept said articles of incorporation, and requiring the secretary of state, in his official capacity, to accept said articles and to issue a certificate of incorporation. Answer was filed to this petition, as so amended, and, upon the trial, a decree was entered, canceling and setting aside the action of the secretary of state in refusing to accept and file said articles of incorporation, and also the action of the executive council in respect to said matter, and directing the executive council to adopt a resolution rescinding their former action, and to pass a suitable resolution directing the said secretary of state to receive said articles of incorporation and file the same and issue a certificate of incorporation. This appeal is prosecuted from the said decree.

I.    The ultimate question for our consideration upon this appeal is whether or not the secretary of state and the executive council of Iowa are clothed, by legislative enactment, with any power or authority to pass upon the propriety or advisability of granting a permit to a corporation to incorporate under the laws of the state of Iowa; or are their functions in this respect only ministerial?

The matter of the creation of bodies corporate is one of ancient origin. In England, the king's consent, either express

or implied, has long been regarded as necessary to the creation of a corporation. 1 Blackstone's Commentaries 472. In the United States, corporations can be created and corporate powers granted only by or under authority of an act of the legislature. Our Constitution, Article 8, Section 1, provides:

"No corporation shall be created by special laws; but the general assembly shall provide by general laws, for the organization of all corporations hereafter to be created, except as hereinafter provided."

Our original statutes on the matter of the formation of corporations were comparatively simple, and had no provisions regarding the submission of the articles to the secretary of state or executive council, and no provision for the granting of any permit or certificate. Code of 1851, Chapter 43. The statutes in regard to the manner of incorporation have been frequently amended. The present statute governing the matter under consideration is Section 1610 of the Code Supplement, 1913. Said statute provides that, before commencing any business except their own organization, articles of incorporation must be adopted, which must be filed, acknowledged, and recorded in the office of the recorder of deeds of the county where the principal place of business is to be. The recorder shall indorse on said articles the time when the same were filed and the book and page where the record will be found. The parts of the statute material to this appeal are as follows:

"Said articles thus indorsed shall then be forwarded to the secretary of state, and be by him recorded in a book kept for that purpose. * * * When articles of incorporation are presented to the secretary of state for the purpose of being filed, if he is satisfied that they are in proper form to meet the requirements of law, that their object is a lawful one and not against public policy, that their plan for doing business, if any be provided for, is honest and lawful, he shall file them; but if he is of the opinion that they are not in proper form to meet the requirements of the law, or that their object is an unlawful one, or against public policy, or that their plan for doing business is dishonest or unlawful, he shall refuse to file them. Should a question of doubt arise as to the legality of the articles, he shall submit them to the attorney-general, whose duty it shall

be to forthwith examine and return them with an opinion in
writing touching the point or points concerning which inquiry
has been made of him.  If such opinion is in favor of the legality
of the articles, and no other objections are apparent, they shall
then, upon payment of the proper fee, be filed and otherwise
dealt with as the law provides.  If, however, such opinion be
against their legality they shall not be filed.  Upon the re-
jection of any articles of incorporation by the secretary
of state, except for the reason that they have been held by the
attorney-general to be illegal, they shall, if the person or per-
sons presenting them so request, be submitted to the executive
council, which shall, as soon as practicable, consider the said
articles and if the council determines that the articles are in
proper form, of honest purpose, not against public policy, nor
otherwise objectionable, it shall so advise the secretary of state
in writing, whereupon he shall, upon the payment of the proper
fees, file the same and proceed otherwise as the law directs; but
if the council sustains the previous action of the secretary of state
in rejecting said articles, such decision by the council shall be
reported to the secretary of state in writing, and he shall then
return said articles to the person or persons presenting them
with such explanation as shall be proper in the case.''

Under the foregoing statute, it is to be noticed that the ar-
ticles of incorporation are first to be presented to the secretary
of state, for the purpose of being filed.  The statute requires that
the said secretary of state shall be ''satisfied'' of certain things
before filing the same.  The things of which the secretary is
required to be ''satisfied'' are as follows:

1.   That the articles are in proper form to meet the require-
ments of law.

2.   That their object is a lawful one.

3.   That their object is not against public policy.

4.   That the plan for doing business is honest and lawful.

The statute provides that, if the secretary of state ''is of the
opinion'' that the articles fail in any one of the four particulars
enumerated, ''he shall refuse to file'' the same.  It will also be
observed that provision is made for securing the opinion of the
attorney general in regard to the legality of the articles; and
the statute also provides that, if the opinion of the attorney

general is in favor of the legality of the articles, "and no other objections are apparent," they shall then be filed.

The statute also further provides that, if the secretary of state shall reject the same for any reason except that they have been held by the attorney general to be illegal, then the articles may be submitted to the executive council. The law provides that the executive council shall "consider the said articles," and also "determine" four things in respect to said articles, before the same can be filed. As stated in the statute, these are:

1. That the articles are in proper form.
2. That they are of honest purpose.
3. That they are not against public policy.
4. That they are not otherwise objectionable.

If the executive council agree on these four things, the secretary of state shall be so advised.

No question is raised in this case in regard to the articles' being in proper form, nor is it contended that the business is an unlawful one. The secretary of state informed the appellee that the specific objection made to the articles was in regard to Article 4, and said objection was stated by the secretary of state as follows:

"As to the articles of incorporation of the Federal Oil Company which you recently submitted to this department, can say I find that Article 4 provides, in part, that the authorized capital stock be $200,000, of which amount $195,000 shall be designated as preferred stock and $5,000 as common stock, each share of the par value of $10. The preferred stock is to receive a 7 per cent cumulative dividend, and after the payment of 7 per cent on the preferred stock, the common is to be paid a $7.00 yearly cumulative dividend on each $10 share. Further dividends to be paid on the same basis.

"As previously stated, this department feels that these two classes of stock are entirely too disproportionate, and does not, therefore, feel disposed to approve of the articles in such form. It occurs to me that the average investor regards preferred stock as a first lien on the assets of the corporation, subject only to the claims of creditors, and naturally supposed the cause of such prior rights that it is nonspeculative and a safe investment. The only security which the preferred stock has in this instance

seems to be the amount which they themselves invest, together with whatever may be paid to the corporation for common stock. Should the corporation sell its stock through fiscal agents, it would be required to pay a considerable part of the sale price for commissions. The capital and such securities as there might otherwise be, would be impaired from the very beginning.

"After talking this matter over with Mr. Ramsay, it has been decided not to file the articles until changed as to the proportion of common and preferred stock. The ratio, in value, should not exceed one of common to ten of preferred, and must be issued in the same proportion."

In reporting the matter to the executive council, the secretary of state stated:

"Inasmuch as the two classes were so disproportionate, it occurred to me that the preferred stock was preferred in name only; and for this reason, on the ground of public policy, I refused to file said articles."

The record of the executive council was that the council did not approve the articles of incorporation of the Federal Oil Company, "as the said articles were contrary to good business practice."

The ultimate and final question for our decision is this: Under our statute, where the articles of incorporation are in proper form, and where the object is a lawful one, can the secretary of state or the executive council refuse to file the articles and issue the proper certificate? On the one hand, it is contended that the secretary of state and the executive council are purely ministerial officers, whose sole duty is to inspect the articles and ascertain from the articles themselves whether they are in proper form, and whether the object is a lawful one; and that, if it appears from the articles themselves that they meet these requirements, said officials have no discretion in the matter, and must file the same and issue a certificate therefor. On the other hand, it is the contention of the appellants that the statute has created a tribunal which has been clothed by the legislature with broad and comprehensive powers, which far exceed the mere examination of the articles and the determination as to their being in proper form, or whether the business to be conducted is lawful. It is contended that, under this statute,

the legislature has seen fit to clothe the secretary of state, in the first instance, with the duty of ascertaining, in addition to other matters, that the object of the corporation is not against public policy; and that, on appeal from his decision to that of the executive council, the latter tribunal is clothed with the power to "determine," not only whether the articles are in proper form, of honest purpose and not against public policy, but also whether they are, in the opinion of said executive council, "otherwise objectionable."

The decisions of other courts can be of but little value to us in the determination of the question before us, for the reason that the statutes of the various states differ very radically in respect to the subject of incorporation. In some of the states, the procedure is wholly through the courts, and application is made to the courts for the issuance of a charter. In other states, the governor or the secretary of state is designated as the officer to examine and approve the articles of incorporation. There is an utter want of uniformity throughout the several states in the matter of the methods of incorporation. There are many decisions holding that the act of the secretary of state or other designated officer is a purely ministerial act, and that he has no discretion in the matter, and that a writ of mandamus can issue, to compel him to file articles of incorporation. It is obvious that every such case necessarily involves a construction of the particular statute of the state in which the case arises.

*McChesney v. Batman,* 121 Ky. 303 (89 S. W. 198), decided by the court of appeals of Kentucky, illustrates this line of decisions. Therein it is said:

"It is the duty of the secretary of state only to record in his office such articles of incorporation as the statute provides for. If articles of incorporation are tendered to him for a corporation not included in the statute, he should not accept or record them, or if the articles are not duly acknowledged, or if they fail in any substantial particular to comply with the statute, he may refuse to record them. But, where the articles of incorporation substantially comply with the statute, he has no discretion, and may be compelled by mandamus to file and record them."

To like effect, in construing the statutes of different states, see *State v. Cook,* 174 Mo. 100 (73 S. W. 489); *State v. Taylor,*

55 Ohio St. 61 (44 N. E. 513); *People v. Payn,* 161 N. Y. 229 (55 N. E. 849); *California Tel. & L. Co. v. Jordan,* 19 Cal. App. 536 (126 Pac. 598); *Bankers Dep. G. & S. Co. v. Barnes,* 81 Kan. 422 (105 Pac. 697); *State v. Rotwitt,* 17 Mont. 537 (43 Pac. 922).

On the other hand, in some of the states there are statutes which apparently confer upon the secretary of state, or other officer or tribunal, discretionary powers in regard to the acceptance and approval of articles of incorporation. The statutes of Texas (Art. 1126, Complete Tex. St., 1920,) provide that the stockholders of corporations of a certain class "shall furnish satisfactory evidence to the secretary of state that the full amount of the authorized capital stock has in good faith been subscribed," etc. The statute (Art. 1128, Complete Tex. St., 1920,) also provides:

"If the secretary of state is not satisfied, he may, at the expense of the incorporators, require other and more satisfactory evidence before he shall be required to receive, file and record said charter."

In *Beach v. McKay,* 108 Tex. 224 (191 S. W. 557), the Supreme Court of Texas, in construing these statutes, says:

"It is clear that Article 1128, above, lodges a discretion in the secretary of state to refuse to file and record a charter applied for, when the stockholders of the proposed company have failed to furnish satisfactory evidence to him that the full amount of the authorized capital stock has been in good faith subscribed, and 50 per cent thereof paid in cash, or its equivalent. We are properly denied the power to require by mandamus the secretary of state to issue a charter in a case where he has not received evidence satisfactory to him that the full amount of the authorized capital stock has in good faith been subscribed, and 50 per cent thereof paid in cash or in its equivalent, as provided in Article 1126.'"

See, also, *Smith v. Wortham,* 106 Tex. 106 (157 S. W. 740); *People v. Rose,* 188 Ill. 268 (59 N. E. 432); *State v. Nichols,* 40 Wash. 437 (82 Pac. 741).

It must be conceded that it is the general rule that the secretary of state, or other officer designated by statute to pass upon the articles of incorporation, is only a ministerial officer.

It is generally held that he has no discretion in the matter, and that he can be compelled by writ of mandamus to file articles of incorporation which are in proper form. See cases supra; also, 1 Fletcher's Cyclopedia of Corporations, Section 212; 14 Corpus Juris, Section 148; Thompson on Corporations, (2d Ed.), Section 220, and many cases cited therein.

As before stated, these pronouncements must all be considered in view of the statutes of the particular states. The legislature had the undoubted right to enact any statute regulating the manner of incorporation, not in contravention of the provisions of the Constitution. Under this power, the legislature has seen fit to enact special statutes governing the incorporation of life insurance companies (Code, Title IX, Chapter 6); insurance companies other than life (Code, Title IX, Chapter 4); savings banks (Title IX, Chapter 10); and state banks (Title IX, Chapter 11).

No one can dispute the proposition that, under the Constitution of the state, the legislature has the undoubted power to prescribe the terms and conditions under which a corporation shall come into being and operate within this state. It has passed statutes respecting the manner of organization of certain specified corporations. It has likewise adopted a general incorporation statute. Under such statute, the legislature has designated and prescribed the essential steps which must be taken, in order that a corporation may come into being and be clothed with the powers and privileges of a body corporate. The legislature had the power to, and it did, require that the articles of incorporation must contain certain specified and essential requisites. Likewise, the legislature had the undoubted authority to require the giving of a notice of incorporation in a certain manner, for a certain length of time, and containing specified particulars. The legislature also had the power to require that the articles of incorporation shall be filed with and recorded by certain designated officers. The legislature also had the power to provide that an officer of the state should ascertain whether or not the articles complied with certain of the requirements designated by statute.

It also must be equally true that the legislature has the power to provide that a court, a designated officer, or a special tribunal shall pass upon the sufficiency of the articles of incor-

poration, and also upon their legality, and whether the same are against public policy, or are inimical to the welfare of the people of the state.

With this plenary power vested in the general assembly, it cannot, we take it, be successfully maintained that the legislature could not lawfully create a tribunal clothed with power to legally ascertain and determine whether it is either ''against public policy'' or ''otherwise objectionable'' that the state should permit any certain corporation to be organized under the laws of this commonwealth, and receive the sanction and permission of the sovereign power to exist and to operate.

Our inquiry then is, To what extent has the legislature proceeded under this authority? It has made definite and specific laws for the initial steps in the organization of a corporation under our general incorporation laws. It has provided the essential things that the articles must contain. It has specified how they shall be executed and recorded. It has designated the kind of notice that shall be given. It has stated where the articles of incorporation must be filed and recorded. But it has done far more than this. It has named and designated an officer of the state as one to whom such articles of incorporation must be submitted, and has clothed said officer with the power, authority, and bounden duty of determining certain things respecting said articles. He is not only to pass upon their compliance with the specified requirements respecting legal formalities, but, as we construe the statute, he is vested with additional powers, which the legislature had the right to confer. These powers are something more than ministerial in character. It is more than ''a purely ministerial act'' for this officer to ascertain and determine whether the object of the corporation is ''not against public policy.'' It is something more than ''a purely ministerial act'' for this officer to ''satisfy'' himself that the ''plan for doing business is honest and lawful.'' We know of no good reason why these matters may not be ascertained by other means and from other sources than a mere examination of the articles of incorporation. The statute clothes the secretary of state, by express and definite terms, with the authority and the duty to ascertain and ''determine'' these matters, as well as whether the articles are ''in proper form to meet the requirements of the law.''

In this connection, it is also to be noticed that the statute expressly provides that, should a question of doubt arise as to the legality of the articles, the secretary of state shall submit them to the attorney general, whose duty it shall be to forthwith examine and return them, with an opinion in writing touching the point or points concerning which an inquiry has been made of him. If such opinion is in favor of the legality of the articles, *and no other objections are apparent,* they shall then, upon payment of the proper fee, be filed and otherwise dealt with as the law provides. The statute also provides that, if the articles are rejected for any other reason than that they have been held by the attorney general to be illegal, then they may be submitted to the executive council. It is very apparent from this provision of the statute that the legislature intended to provide that questions as to the legality of the articles should be submitted to the attorney general of the state for his decision. But it is to be noted that the statute expressly provides that, even if the attorney general decides that the articles are legal, it still remains with the secretary of state to determine whether "other objections are apparent." The legislature has, therefore, provided for much more than the performance of ministerial duties in respect to articles of incorporation. It has provided that the attorney general shall pass upon the legality of all articles of incorporation that are submitted to him; but "other objections" to the articles are left for the determination of the secretary of state, in the first instance.

That the legislature intended to make the functions of the secretary of state something more than "purely ministerial" is also evidenced by the fact that it expressly provided for an appeal from the action of the secretary of state to a designated tribunal, which the legislature clothed with specific power to determine the matters involved. This tribunal is the executive council of the state, and its duties are set forth in the statute. Can it be successfully claimed that, under this designation of powers and duties, the executive council are only "ministerial officers," engaged in a "purely ministerial act?"

The statute provides that, if the executive council sustains the previous action of the secretary of state, it shall so report in writing. This statute, by its very terms, makes the executive

council an appellate tribunal, to review the action of the secretary of state. If the secretary of state is merely a ministerial officer, clothed with no discretion whatever in the matter, why provide a tribunal to pass upon and determine the questions involved *de novo*? We think that, by the enactment of this statute, Section 1610, Code Supplement, 1913, the legislature of this state intended to clothe the secretary of state with other powers than those of a purely ministerial character. We think that the legislature intended to and did clothe him with powers to ascertain and determine the very matters and things designated by the statute, to wit: (1) Whether the articles of incorporation presented to him are in proper form to meet the requirements of the law; (2) that their object is lawful; (3) that their object is not against public policy; and (4) that the plan of doing business provided for is honest and lawful. In so doing, his powers are other and broader than those generally recognized as "purely ministerial." From his decision, an appeal lies to a tribunal designated by the legislature, and its powers are likewise more than ministerial.

We cannot be unmindful of the history of the times in which we live, nor can we shut our eyes to the declared policy of the state, not only by this but by other statutes, to bring corporations organized under the laws of the state of Iowa under the direct investigation of a competent tribunal, so that corporations whose methods of business may be against public policy or "otherwise objectionable" shall not be permitted to organize and do business in this state. The policy of the state in regard to incorporation and the sale of corporate stock is evidenced not only in the statute in question, but also in other statutes. Code Section 1619 provides:

"The articles of incorporation, by-laws, rules and regulations of corporations hereafter organized under the provisions of this title, or whose organization may be adopted or amended hereunder, shall at all times be subject to legislative control, and may be at any time altered, abridged or set aside by law, and every franchise obtained, used or enjoyed by such corporation may be regulated, withheld, or be subject to conditions imposed upon the enjoyment thereof, whenever the general assembly shall deem necessary for the public good."

Chapter 13-A, Title IX, Code Supplement, 1913, deals with the subject-matter of the issuance of stock on the partial-payment or installment plan.  Section 1920-m provides:

"If the executive council is satisfied that the business is not in violation of law or of public policy, and is safe, reliable and entitled to public confidence, and if it shall approve the form of certificate of stock or contract, it shall direct the auditor of state to issue to such association a certificate of authority authorizing it to transact business within this state until the first day of March next succeeding the date of such authorization."

Chapter 13-B, Title IX, of the Supplemental Supplement to the Code, 1915, is also evidence of the policy of the state in the regulation of corporations and the matter of the sale of their stock.  We think that the legislature of this state has evidenced a definite policy in regard to the organization of corporations and the sale of corporate stock.  As a part of that policy, it has provided that the state, by its proper officers, shall investigate the "plan of doing business," and shall ascertain, not only whether any corporation is unlawful, but whether it is "against public policy" or "otherwise objectionable," before it shall be clothed with authority from the state to transact business.  The legislature had the right to confer these powers, duties, and authority upon these officials, and it has seen fit so to do.

While it may be that this legislation confers broader and more comprehensive powers than are usually conferred on similar officers, respecting the approval of articles of incorporation, we do not find it to be inconsistent with the policy of the state in this regard, nor in contravention of our Constitution.  We are of the opinion that the powers, duties, and authority conferred upon the secretary of state and the executive council by the statute in question involve the exercise by said officials of discretion and judgment, and are more than ministerial; and we so hold.

II.  It is contended by appellants that the action of the executive council is final, and cannot be reviewed by the courts.

2. CERTIORARI: refusal of secretary of state to file articles.

No provision is made in the statute for any appeal from the action of the executive council. Under the provisions of our statute, however,

a writ of certiorari can issue, to review the action of the executive council, within the limits of the functions of such a writ. Our statute, Code Section 4154, provides:

"The writ of certiorari may be granted when authorized by law, and in all cases where an inferior tribunal, board or officer exercising judicial functions is alleged to have exceeded his proper jurisdiction, or is otherwise acting illegally, and there is no other plain, speedy and adequate remedy."

This was the remedy resorted to in the instant case in the trial court. It is unnecessary for us to discuss at this time the proper functions of this writ, or the extent of judicial authority thereunder. We confine our holding to the proposition that application for a writ of certiorari was a proper proceeding in the instant case. This suit calls in question the decision of the executive council in sustaining the action of the secretary of state in refusing to file the articles of incorporation presented by appellee. We fail to find that the said executive council has exceeded its proper jurisdiction, or otherwise acted illegally in said matter.

It follows that the decree of the trial court was erroneous, and the same must be and is—*Reversed.*

EVANS, C. J., WEAVER, PRESTON, STEVENS, ARTHUR, and DE GRAFF, JJ:, concur.