STATE OF IOWA, Appellee, v. M. L. BRADY, Appellant.

**CORPORATIONS:**  Foreign Corporations—Revocation of License.  The
1  statute which empowers the state to revoke a license for the sale of stock of a foreign corporation, with right in the corporation to appeal to the executive council, furnishes all due process to which the corporation may be entitled.

**INDICTMENT AND INFORMATION:**  Requisites and Sufficiency—
2  Selling Corporate Stock Without Permit.  An indictment for selling corporate stock without a permit from the secretary of state need not allege that, at the time in question, the defendant knew that his permit had been revoked.

**CORPORATIONS:**  Foreign Corporations—Sale of Stock Without Per-
3  mit—Nonvariance.  A charge that corporate stock was sold "after a permit for such sale had been canceled" is sustained by proof that the sale was made "after the permit would have expired by its own terms, had there been no cancellation."

**EVIDENCE:**  Documentary—Official Correspondence of Public Office.
4  In a criminal prosecution for selling corporate stock after permit therefor was canceled, letters purporting to be written by the president of the corporation with reference to the permit are *prima*

*facie* admissible, on a showing that they are the official files of the office of the secretary of state.

**CORPORATIONS:** Foreign Corporations—Sale of Stock Without Permit. Evidence in a prosecution for selling corporate stock without a license reviewed, and held to amply justify the jury in rejecting defendant's plea that he was selling his own personal stock, and not stock belonging to the corporation.

*Appeal from Lyon District Court.*—WILLIAM HUTCHINSON, Judge.

JUNE 21, 1922.

REHEARING DENIED SEPTEMBER 30, 1922.

THE defendant was indicted and convicted upon the charge of selling stock in a foreign corporation after his permit to engage in such business had been canceled, and from the judgment against him on the verdict of the jury, he appeals.—*Affirmed.*

*Riniker & Thomas,* for appellant.

*Benjamin J. Gibson,* Attorney General, *John Fletcher,* Assistant Attorney General, *B. J. Flick,* Assistant Attorney General, and *Lester A. Riter,* County Attorney, for appellee.

WEAVER, J.—I. The appellant first complains that the statute under which he was convicted is unconstitutional, in that he had a property right in his permit to sell stock, and that the statute which permits the cancellation of such right or privilege without notice or opportunity to make defense deprives him of such right without due process of law. We think there is no merit in this objection. The state is authorized to fix the terms upon which it will permit corporations to do business within its jurisdiction, and the statute in question does no more than to provide that, subject to certain conditions and exceptions, all persons undertaking to deal in corporation stocks must, before offering, selling, or negotiating for the sale of such stocks, obtain a permit therefor from the office of the secretary of the state. Such permit is issued subject to revocation or cancellation by the secre-

1. CORPORATIONS: foreign corporations: revocation of license.

tary of state, and the party who is denied a permit or whose permit is canceled is given a right of appeal to the state executive council. See Title IX, Chapter 13-B, Code Supplemental Supplement, 1915. This provision for appeal preserves the right of the person against whom the ruling is made to a hearing before the appellate tribunal so provided, and is sufficient compliance with the constitutional guaranty of due process of law. See, also, as having some bearing upon this question, our recent decision in *Lloyd v. Ramsay,* 192 Iowa 103.

II. The appellant has prepared his brief with but little regard to our rules, in that it contains no assignment of errors or brief of points, as required by Rule 53; but, as we interpret his argument, he first objects to the sufficiency of the indictment because it is not alleged that he knew of the cancellation of his permit at the time of the act complained of. There is nothing in the statute making it necessary to allege such knowledge in order to charge the offense. The fact of knowledge on part of the accused may or may not be an evidentiary fact proper to be considered on the trial, but its allegation is not necessary, to give validity to the indictment.

2. INDICTMENT AND INFORMATION: requisites and sufficiency: selling corporate stock without permit.

III. It appears in evidence that a permit was issued to the defendant in the year 1917, to expire on the first secular day of July, 1918, authorizing him to sell in Iowa shares of stock in The Sioux Falls Stock Yards Company, a Colorado corporation. Under the evidence, the jury could have found, and evidently did find, that, on February 19, 1918, the secretary of the state of Iowa, becoming convinced that said corporation was financially unsound, revoked and canceled the permit, and that notice of such action was given to said company. No appeal was taken from such order, nor was the permit renewed after the date at which it would have expired, by its express terms. There was evidence, also, that, on January 31, 1919, nearly a year after the permit was canceled, and six months after the date at which it would regularly have expired, the defendant, representing himself as the agent and representative of the Sioux Falls Stock Yards Company, sold to Mrs. Elizabeth Morrison, in Lyon County, Iowa, 73 shares of the stock in said company, receiving therefor in money and securities the sum of $1,080.75.

Defendant, as a witness, admits making the sale and receiving the consideration, but denies that he made the sale as agent or representative of the said corporation, or that he pretended or represented to Mrs. Morrison that he was acting in such capacity, but says that, on the contrary, the stock sold was his own individual property, and that he sold it as such. The testimony of the woman is corroborated in all essential particulars by that of her employer, Mr. Wiese, who was present and heard the conversation. To say nothing of other pertinent circumstances to which we shall later refer, the testimony of these witnesses alone was sufficient to take the question of defendant's guilt to the jury; and unless there be other reasons for setting aside the verdict, it must stand.

IV. It is also alleged by appellant that the indictment is defective in "failing to charge that defendant was not the bonafide owner of said stock." This seems to be a misconception of the record; for reference to the language of the indictment reveals that it is so charged.

V. Again, it is said the conviction cannot stand because the charge made in the indictment is for making the sale after the permit had been canceled, when the proof shows it to have been made after the permit had expired by its own limitation. But the cancellation, if one was made, is shown to have been ordered in February, 1918, and the sale to Mrs. Morrison was made in January, 1919, which assuredly was "after the permit was canceled." The fact that, if the cancellation had not been ordered, it would have expired of its own limitation before the sale of this stock, is quite immaterial.

3. CORPORATIONS: foreign corporations: sale of stock without permit: nonvariance.

VI. Much complaint is made because of the admission in evidence of a certain letter purporting to have been written by one Martin, as president of the Colorado corporation, to the secretary of state. It is objected that there is no sufficient evidence showing the official character or connection of Martin with the corporation, and no identification of the letter as having been written by Martin. The letter and other papers produced were identified by the officer who was their official custodian, as being the records of his office in connection with

4. EVIDENCE: documentary: official correspondence of public office.

the permission given to said corporation and its agents to do business in Iowa; and this, in our judgment, was enough to make them at least *prima facie* admissible.

VII. Some criticism is directed against the court's charge as being too voluminous and complicated, and tending to confuse and mislead the jury. The statute which is alleged to have been violated by the defendant is complicated by an unusual number of exceptions and qualifications, and the court thought it necessary to set out its terms with considerable particularity; but we are unable to see how any of the matter so mentioned could tend to the defendant's prejudice, and the exception taken thereto cannot be sustained.

VIII. Counsel declare with much emphasis that the claim that defendant "was selling his own stock was clearly proven, and that no one disputed this; yet the court permitted a biased jury, filled with revenge and hatred for the defendant, to pass on the weight of the evidence, when there was no evidence to weigh, on part of the state; and the submission of the ownership of the stock to the jury was clearly an error of the court." To agree with counsel that there was no evidence to disprove the defendant's story of his individual ownership of the stock requires a somewhat heroic draft upon human credulity. The corporation, in applying for permit to solicit purchasers for its stock, asked for "authority to sell its securities in Iowa under the provisions of House File 351 of the Acts of the Thirty-sixth General Assembly," and in its statement of its financial condition, represented that it held treasury stock to the amount of $58,670, and that its stock was "to be sold through salesmen." Its entire "working capital" consisted of this same $58,670 in "treasury stock," and the permit issued to it was "to sell $58,670 of its common stock within the state of Iowa." Another exhibit showed the authorized capital of the concern to be $500,000, every dollar of which had been issued to one Brachvogel "for the purchase of ground, establishment of trackage, grading, construction of fences, pens, runways, sewers, concreting and erecting of exchange building in years." Brachvogel, holding every share of stock, in consideration of these *promised* improvements, moved by that prodigal spirit of philanthropy

5. CORPORATIONS: foreign corporations: sale of stock without permit.

which marks his kind, supplied the void in "working capital" by "donating" to the company the above mentioned item of $58,670, in the form of "treasury stock." As a part of the same showing to the secretary of state, the company listed as its authorized agents the same Mr. Brachvogel, of St. Paul, Minnesota, C. C. Hendie, of Denver, Colorado, and M. L. Brady, of Emmetsburg, Iowa, who is the defendant herein. The appointment of Brady as the company's agent was evidenced by a duplicate certificate, dated August 21, 1917, to expire July 1, 1918, "unless sooner revoked." While the secretary of state granted the permit, as stated, he was not satisfied with the financial showing, and qualified the order with the statement that, if an amended statement was not filed within a reasonable time, the permit would be canceled. The promised amendment was not made, though repeatedly called for; and on February 19, 1918, the permit was canceled. After that date, neither Brachvogel nor defendant nor any other person could lawfully sell such stock in the state of Iowa, unless the transaction could be upheld under some of the exceptions provided for in the statute. Among these exceptions is one (Section 1920-u13) by which a bona-fide owner may sell, exchange, or otherwise dispose of the same (subject to certain restrictions), "provided that the same are sold by said owner in good faith and not for the purpose of evading the provisions of this act." To bring himself within the protection of this exception, it is the contention of the defendant that he was the bona-fide holder of the stock which he sold Mrs. Morrison. The main question presented by this appeal is whether the evidence is such as to justify the jury in finding that appellant was not the bona-fide owner of these shares, or whether his alleged individual ownership was a device or subterfuge, to evade the provisions of the statute.

We think it must be said that a finding adverse to the appellant upon this vital issue has sufficient support in the record. That he was the appointed and authorized agent of the corporation to sell its stock in Iowa, is shown beyond dispute. On August 20, 1918, after the permit to do business in Iowa had been canceled, he took an assignment or bill of sale from certain directors of the corporation living in Colorado, of 4,884 shares, of nominal or par value of $10 each, giving them his

promissory note for the full face value, $48,840. As collateral security for the payment of this sum, he left every one of these 4,884 shares in the hands of the payees, with an arrangement or agreement that, whenever he remitted or sent in a payment of $10 or any multiple thereof, with a "request for so many shares of stock to be issued to whomsoever he shall name," then the bank with which the note was deposited would "deliver and send to M. L. Brady such number of shares as he may request and pay for at the rate of $10 per share, and credit payment on the note of $48,840." No stock was, in fact, ever issued to the defendant; and, so far as appears, he never paid a dollar on said alleged purchase, except as he made sales (collecting payment in advance) and remitted money to Denver, receiving therefor certificates of shares issued to those to whom he made the sales. In other words, except for the formality of giving his promissory note, the transactions were conducted precisely as they would have been under a simple agency. The negotiations for this alleged purchase of the stock by defendant, he says, were partly arranged as early as January, 1918, although the written assignment was not made until in August following. The defendant himself took active part in trying to prevent the canceling of the permit, and as late as January 22, 1918, wrote to the secretary of state, quoting the president of the company to the effect that an "efficient accountant" was then preparing a new statement of its assets and liabilities, which would be forwarded at a near date. He further represented that he himself had had the matter up with the officers of the Stock Yards Company, and "finds those people very reliable," and adds his personal assurance that "the officers and men of the Sioux Falls Stock Yards Company are strictly honest and sincere business men, and will prepare for you what your office requires." The significance of these dates is emphasized when we remember that it was in January and February of 1918 that the office of the secretary of state was pressing the corporation to perform its promise to perfect or amend its application for permit, failing in which the permit was canceled; and it thus became necessary to adopt some other plan or method by which these promoters could continue their harvest of gullible investors in Iowa, without incurring the risk of the penalties of the law. It

is difficult to read the record of these dealings without becoming convinced that defendant was never the bona-fide owner of the stock sold to Mrs. Morrison. The question of the good faith of the transaction was for the jury.

We find no reversible error in the record, and the judgment of the district court is—*Affirmed.*

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.