WIGGINTON, Acting Chief Judge.
Appellant, Blood Service Plan Insurance Company, a corporation, has appealed an *35 order rendered by the State Insurance Commissioner denying its application for a Certificate of Authority to engage in the insurance business in this state. It is contended by appellant that it has fully met and complied with all the requirements specified and imposed by the statutes of this state entitling it to a certificate to engage in the insurance business in Florida, and that the appellee Commissioner acted without or in excess of his jurisdiction, or alternatively, in a capricious or arbitrary manner, in denying the application in question.
Appellant is a corporation engaged exclusively in that phase of the disability insurance business which involves the writing of indemnity insurance against the expense and cost of blood transfusions. It is admitted and engages in this business in forty states of the nation. Its contracts of insurance indemnify the insured against all losses incurred for transfusions of whole human blood or blood products, and carries out such indemnity by discharging the insured’s obligation to the blood bank furnishing blood to the insured.
Appellant neither owns nor acquires blood in any form. The hospital or other agency which furnishes blood in any given instance normally desires payment therefor in cash. Ninety-two per cent of all claims serviced by appellant are discharged by the payment of money. Of the remaining eight per cent, approximately two per cent of the agencies supplying blood request that payment to them be made by returning in kind the blood or blood products so furnished. The remaining six per cent request payment partly in kind by blood or blood products, and partly by money. Since most blood required by appellant’s insureds is furnished through blood banks, appellant customarily engages the services of local community or hospital nonprofit blood banks (or persons designated by them) as selling agents, but its sales activities are not confined to such agents.
All premiums charged by appellant for the insurance contracts issued by it are paid and received in cash. In those instances in which appellant conducts its business through agents who are or work in close cooperation with local blood banks, such banks frequently pay to appellant the insurance premium in cash on behalf of acceptable blood donors who are willing to make blood donations to such banks.
At the hearing before the Commissioner, appellant offered, and there was received in evidence, documentary proof showing full and complete compliance by appellant with all requirements imposed by the statutes as a prerequisite for entitlement to a certificate of authority to transact insurance business in Florida.[1] The evidence demonstrates without dispute that appellant meets each and all of the statutory standards for admittance, and no issue has been made as to any of them. These relate to the organization of the company, the reserve requirements, the history of operations, Nthe quality of management, the nature of ownership, the capital requirements, and other pertinent and practical aspects of insurance company operation.
At the hearing no direct testimony or evidence of any kind was offered in opposition to the application filed by appellant. There was introduced into the record, however, a series of written communications addressed to the Commissioner by individuals and blood bank organizations expressing hostility toward appellant’s insurance operation, and opposition to the application which it had made. We can appreciate appellant’s dilemma when faced with the necessity of litigating against the Commissioner’s mailbag consisting entirely of unverified correspondence whose authors were not present at the hearing for cross-examination as to their competency. The letters may be roughly categorized in groups as follows: (a) those which assumed that appellant’s business would be in direct competition with the local nonprofit blood banks operated in *36 the several communities of the state; (b) those which assumed that the sale of the type of insurance offered by appellant would adversely affect the ability of local community blood banks to procure voluntary donations of blood by donors on whom they depend for an adequate supply of blood to carry on their functions as a bank; and (c) those which generally oppose the idea of equating money with blood, and who feel that insurance of the type offered by appellant would be tainted with commercialism and offensive to the sensibilities of our citizenship.
In the order appealed the Commissioner set forth the findings of fact on which he predicated his denial of the certificate applied for. At the outset the Commissioner found that the financial condition of appellant is satisfactory and that it has a satisfactory history in its domiciliary state as well as in the other states where it has been admitted to transact insurance business, both as to management and plan of operation. The findings on which the Commissioner’s order of denial is based, and the conclusion reached by him on the record made at the hearing, are as follows:
“(3) The applicant company, if admitted, will make available, through blood bank agency plans, contracts of insurance which will provide monetary reimbursement for the costs of human blood as distinguished from the generally accepted practice whereby blood banks are reimbursed in kind, viz. blood for blood.
“(4) Correspondence from major blood bank facilities in this state indicates persons most familiar with the normal operation of blood bank programs are inalter-ably opposed to the establishment of a blood insurance program in this state because of the probable reduction in the supply of available blood where persons using blood may reimburse the supplying blood bank in money as distinguished from blood replacement by donors.
“(5) The company, although presenting evidence of its successful operations through a closely related statewide blood bank program in Colorado and other states wherein it is authorized to do business, admittedly is without blood bank agency facilities necessary for its successful operation in this state.
“WHEREFORE, it is my opinion that the admission to the State of Florida and the granting of a certificate of authority to applicant Blood Service Plan Insurance Company at this time would not be in the best interest of the citizens of the State of Florida because of (a) the unique character of the company’s operation which requires blood bank agency facilities which it does not now possess and (b) the reasonably anticipated impact on the operation of the blood bank program in this state in the reduction of number of blood donors because of cash benefits payable to blood banks under the company’s insurance contracts.”
Commissioner’s finding number three quoted above is technically correct in that the insurance contract issued by appellant provides only that claims will be satisfied by the payment of money. Such finding, however, ignores the undisputed evidence in the record to the effect that in other states where appellant transacts its insurance business the small percentage of cases in which payment of losses is requested to be made in blood or blood products, rather than by the payment of money, such requests are in every instance met by appellant.
Commissioner’s finding number four quoted above is based upon correspondence received from individuals and organizations, none of which was competent evidence or possessed any probative value.[2] *37 The claim made by some of these correspondents to the effect that the establishment of a blood insurance program in this state would probably cause a reduction in the supply of available blood required by blood banks for their operation is refuted by the only sworn testimony offered at the hearing by appellant’s witnesses. The proof indicates that the contrary is true in other states where appellant operates. Be that as it may, we find nothing in the statute which authorizes the commissioner, even in the broadest exercise of a lawful discretion, to reject the application of an otherwise qualified insurance company to transact business in Florida on the ground that such business might have an adverse impact upon some other business or undertaking carried on by others over whom the insurance commissioner has no statutory responsibilities or duties.
Commissioner’s finding number five quoted above is predicated solely on the fact that at the time of the hearing appellant had not then established blood bank agency facilities in this state, and there was no reasonable prospect that it would be able to do so through blood banks in the future. The finding concludes with the assumption that blood bank agency facilities would be necessary in order for appellant to successfully engage in the insurance business in this state. Our search of the statutes fails to reveal any provision requiring that agency facilities be established in this state by an otherwise qualified insurance company as a prerequisite to the granting of an application to conduct business in Florida.
The import of the Commissioner’s findings and conclusion is to the effect that appellant should not be permitted to engage in the business of writing the type of insurance offered by it merely because some established community blood banks in the state oppose such application on the assumed ground that such an insurance operation would be adverse to their best interests. We are of the opinion that such ground, even had it been established by competent evidence in the record, would not be legally sufficient to withhold from appellant a certificate to transact its business in Florida.
This court judicially knows that the credit life insurance business operates extensively in this state in response to a legitimate demand therefor. Such contracts insure the life of a borrower for the term of a loan of money, and in the event of the insured’s death the insurance policy is answerable for the unpaid portion of the loan existing at the time of death. The court judicially knows that such insurance contracts are handled almost exclusively by employees of financial institutions who issue and service- the contracts, collect the premiums, retain a commission, and otherwise act as agents for the issuing companies. Should the lending institutions of this state suddenly decide that the credit life insurance business was inimicable to their best interest and that of their customers, and therefore refuse to act as agents for such insurance companies, this eventuality would not constitute a valid ground for refusing to permit credit life insurance companies otherwise qualified to engage in business in this state. Despite any opposition which might arise from lending institutions, credit life insurance companies should be free to establish other agency facilities and conduct their business without dependence upon the institutions which normally act as agents for such companies throughout the state and nation.
The same thing is relatively true of the appellant in this case. There is no requirement of law that blood bank organizations *38 act as agents for insurance companies issuing contracts of the type offered by appellant in this case. If such agencies and organizations refuse to cooperate or enter into agency relationships with appellant, there is no requirement of law that they do so. In this event it would be incumbent upon appellant, if admitted to transact business in Florida, to establish other agency facilities for the conduct of its business. This is a matter of concern only to the insurance company, however, and is not a factor which the Commissioner may legitimately rely upon as a ground for rejecting the application sought. Of course, any agency facilities which appellant seeks to establish will be under the direct jurisdiction of the Commissioner, and will be required to comply with the statutes of this state relating to insurance agents.
The statute with respect to the issuance of certificates of authority in cases of this kind provides as follows:
“(2) The commissioner shall issue to the applicant insurer a proper certificate of authority if he finds that:
“(a) The insurer has met the other requirements of this code; and
* * *
“(3) If he does not so find, the commissioner shall issue his order refusing the certificate stating the reasons therefor.” [3]
It is our view that the statute specifically spells out each and every requirement which the legislature intended that an insurance company should fulfill as a prerequisite to being allowed to conduct its business in Florida. The requirements specified by the legislature and set forth in the statute are exclusive. Although the Commissioner is accorded a reasonable latitude of discretion in determining whether the requirements of the statute have been complied with,[4] he is not authorized nor empowered to impose additional conditions and requirements as a prerequisite to granting a certificate of authority under the statute.[5] This is the rule generally followed in this state[6] as well as in other states of the nation.[7]
 In justification of his order the Commissioner contends that the law impliedly invests him with the discretion to determine whether the admission of any given insurance company to transact business in Florida will be in harmony with the best interest of the public. He relies on this assumed discretion to support his conclusion that it will not be in the best interest of the public to grant the certificate of authority applied for herein because to do so would adversely affect the interest of blood banks in the state. The Commissioner bases this contention on that provision of the insurance code which provides as follows :
“The commissioner shall issue to the applicant insurer a proper certificate of authority if he finds that:

“With reference to a domestic company, the issuance of such certificate of *39 authority would not have a substantial adverse effect on the stability of the insurance industry of this state and would be in the best interest of the public. In making his finding, the commissioner shall take into consideration the number of outstanding certificates of authority and the number of new certificates issued within the immediately preceding three (3) years.”[8]
An obvious fallacy attaches to the Commissioner’s reliance on the foregoing quoted section of the statute to support his order. It is clear that this provision of the insurance code applies only to domestic companies, whereas appellant in this case is a foreign company seeking permission to transact business in Florida. The Commissioner earnestly contends that this statute should be interpreted to include not only domestic but also foreign and alien companies. This we cannot do without legislating, a function which belongs neither to this court nor to the Commissioner. If the legislature had intended that this provision apply to foreign or alien companies, it would have so specified. However, an examination of the legislative history of the above-quoted Sec. 624.0213(2) (b) as amended in 1965 reveals beyond a shadow of a doubt that it was intended to apply to domestic insurance companies only.[9]
It is our conclusion that the Commissioner’s order rejecting appellant’s application for a certificate to conduct an insurance business in this state was rendered in excess of his jurisdiction, without lawful authority, and is not supported by the evidence contained in the record on appeal. The order is accordingly reversed with directions that the certificate for which application is made be issued.
STURGIS and JOHNSON, JJ., concur.

. F.S. §§ 624.0203, 624.0211, 624.0212, F.S.A.

. F.S. § 120.27, F.S.A.
“The hearing examiner, member of the agency, or agency shall give probative effect to evidence which would be admissible in civil proceedings in the courts of this state, but in receiving evidence due regard shall be given to the technical and highly complicated subject matter *37 agencies must handle and the exclusionary rules of evidence shall not be used to prevent the receipt of evidence having substantial probative effect. Otherwise effect shall be given to the rules of evidence recognized by law in this state. Laws 1961, c. 61-280, § 2.”

. F.S. § 624.0213(2) (a), (3), F.S.A.

. “ * * * recognize that the statutes of this state regulating the insurance industry vest in the Insurance Commissioner a wide range of discretion in dis- • charging the duties and responsibilities • imposed upon him. * * * ” Liberty Mutual Insurance Company v. Larson, (Fla.App.1965) 169 So.2d 866, 872.

. Dakota Nat. Ins. Co. v. Commissioner of Insurance, 79 N.D. 97, 54 N.W.2d 745; Bankers’ Deposit Guaranty & Surety Go. v. Barnes, 81 Kan. 422, 105 P. 697.

. McRae v. Robbins, 151 Fla. 109, 9 So. 2d 284, 290.

. Dakota Nat. Ins. Co. v. Commissioner of Insurance, supra note 5; Bankers’ Deposit Guaranty & Surety Co. v. Barnes, supra note 5; Bankers Life & Casualty Co. v. Cravey, 208 Ga. 682, 69 S.E.2d 87; National Ben. Ass’n. v. Clay, 162 Ky. 409, 172 S.W. 922.

. F.S. § 624.0213(2) (b), F.S.A.

. 1965 Journal of the Senate — -Proceedings of April 30, 1965, p. 245.